## CENTRAL TRUST CO. OF NEW YORK v. HUBINGER.

(Circuit Court, S. D. Iowa, E. D. April 9, 1898.)

Eq. No. 302.

1. JUDICIAL SALE OF PROPERTY AND FRANCHISE—SALE AS ENTIRETY—DESTRUCTION OF ENTIRETY PENDING APPEAL—REMEDY ON REVERSAL.

In foreclosure proceedings in a state court, plaintiff procured a decree in its favor as trustee for $85,000, which was found to be a first lien on property therein described, which included all the rights, privileges, franchises, and property of a street-railway company, which was ordered to be sold as an entirety. At the commissioner's sale, defendant bought the property as an entirety, for $10,000; and, over the objections of plaintiff and others, the sale was confirmed, and the $10,000 paid into court, and applied on fixed costs and claims found to be liens thereon superior to plaintiff's. Defendant conveyed the property to a corporation of which he was the active and absolute manager. He procured the repeal of the exclusive franchise granted to said street-railway company, and the grant of a like one to said corporation. Defendant and said corporation took up portions of the track, changed the lines, laid new tracks on other streets, removed engines, dynamos, and machinery from the power house, removed motors, changed the application of the motive power, etc., so as practically to destroy the identity of the property as an entirety as it was delivered to defendant at the time of the sale. Upon appeal from the order confirming the sale, which was without supersedeas, the order and sale were set aside. Held, in an action in personam against defendant for destroying said property as an entirety, plaintiff is entitled to recover the value thereof at the time it was turned over to defendant, less the amount of the claims which were superior liens to that of plaintiff.

2. SAME—DESTRUCTION OF IDENTITY—OFFER TO RETURN.

A purchaser at judicial sale of all the property, rights, and franchise of a street-railway company, as an entirety, who, pending appeal from the order confirming the sale, surrenders the exclusive franchise granted to

the company, and procures the grant of one to a corporation to which he conveys the property, when sued for the value of the property upon the reversal of such order, cannot successfully plead his willingness to return the property itself.

8. Same—Improvements by Occupying Claimants—Action for Value of Property.

Statutes relating to allowances for improvements and betterments to good-faith occupying claimants of property purchased at judicial sales have no application in an action in personam to recover the value of property purchased at judicial sale, and alleged to have been so changed pending appeal as to be practically destroyed.

4 Same—Good-Faith Purchases—Reversal of Decision.

A purchaser of property at judicial sale, who is made a party to an appeal from the order confirming the sale, and who pending the appeal, which is without supersedeas, conveys the title to the property, and so deals with it as practically to destroy its identity, is not protected from a suit in personam for its value, upon reversal of the order, by Code Iowa 1873, § 3199, which provides that property acquired in good faith under a judgment subsequently reversed shall not be affected by such reversal.

Upon June 1, 1892, the Gate City Electric Street-Railway Company (which is hereinafter called the "Street-Railway Company") duly executed, upon its entire street-railway plant and property, situated in the city of Keokuk, Iowa, its certain trust deed, in favor of the plaintiff herein, the Central Trust Company of New York (which is hereinafter called the "Trust Company"), to secure the payment of bonds issued by said Street-Railway Company, of the face value of $85,000, and interest thereon. Default occurring in said payment, said Trust Company, upon January 2, 1894, filed its petition for foreclosure of said trust deed in the superior court of the city of Keokuk, Iowa; and, upon application of said Trust Company, a receiver was appointed for, and took possession of, the said street-railway plant and property. In such foreclosure suit a large number of parties intervened or were made parties defendant, who presented claims for labor or material furnished said Street-Railway Company, as equitably entitled to priority over the lien of said trust deed. Such proceedings were had in such suit as that, upon March 21, 1894, decree was duly entered in said foreclosure suit. Of said claims it was therein decreed that an aggregate of (about) $10,840 was entitled to precedence, and to be paid before said payment of the $85,000, which was therein decreed to be the amount due to said Trust Company, under its said trust deed.

In said decree appears the following: "The court further orders, each and every party to this controversy agreeing to this provision, and further agreeing that this court has complete and ample jurisdiction to make the provision hereinafter made, that the sale herein provided for shall be without the right of redemption; and such sale shall convey all the interests of all the parties, both complainants, defendants, and interveners, in fee simple, to the purchaser at such sale. It is therefore ordered, considered, and adjudged, each and every party hereto agreeing, that A. J. Hardin be, and he is hereby, appointed as a commissioner to advertise at public sale. [Then follow directions as to advertisement for sale, and description of property.] The said commissioner is authorized and directed to sell said property at public outcry, * * * the said commissioner to report the result of said sale to this court for its approval, it being agreed by each and every party hereto that the deed made and executed by said commissioner, and approved by this court, shall convey to the purchaser at such sale all the right, title, and interest in fee simple, without the right of redemption, of the defendant street-railway herein, and of each

and all of the parties hereto, both plaintiff, defendants, and interveners, free and declared from all right, title, or interest of any parties to this controversy." In an earlier portion of said decree is found the following: "The court further finds that the property described in said mortgage or deed of trust, taken as a whole, constitutes the plant of the Gate City Electric Street-Railway Company; that said property, as described in said mortgage or deed of trust, constitutes the plant of the Gate City Electric Street-Railway Company, which is operated and used as a street railway; that owing to the character of the property, with its appurtenances and franchises, same would be greatly depreciated in value, and its value destroyed, unless same should be sold as an entirety. The court therefore finds that it is of the character of property that should be sold as one entire plant: that such sale should be without redemption, statutory or otherwise, and, in the sale that is hereinafter ordered, such sale is to be of the entire property and plant of the said defendant company, as described in said mortgage, and such sale is to be without right of redemption, statutory or otherwise."

Upon April 28, 1894, said commissioner offered said plant and property at public sale, as by said decree directed. At said sale, defendant John C. Hubinger bid the sum of $10,000, and said plant and property was struck off to him therefor. When said commissioner presented to said superior court, pursuant to the directions in said decree, his report of said sale to said Hubinger, said Trust Company and various other parties to said suit filed objections to the confirmation of said sale. Among the objections so filed was the objection that the bid was not sufficient to discharge the adjudged prior liens and taxed costs. Thereupon said Hubinger offered to increase his bid by the amount required to pay off the incumbrances by said decree made prior to the lien of said trust deed. The superior court overruled said objections, and confirmed said sale by said commissioner to said Hubinger, ordered conveyance to be executed accordingly, and that, upon the payment by said Hubinger of the amount of his said bid, to wit, $10,000, the receiver of said plant and property should turn the same over to said Hubinger. This amount was so paid in, and said plant and property accordingly turned over to said Hubinger, upon May 10, 1894. This amount, as applied by said superior court, was sufficient to discharge all costs and established prior liens, except the lien established in favor of the Illinois Steel & Rail Company. On this lien there yet remained unpaid about $828 or $840. Thereupon said Hubinger purchased and now holds the same. When said plant and property was so turned over to said Hubinger, or very soon thereafter, said Hubinger turned the same over to J. C. Hubinger Company, a corporation organized under the laws of the state of Iowa, with principal place of business at Keokuk, Iowa, and of which said John C. Hubinger was the active, if not the sole, manager. At this time the street-railway line was greatly out of repair, in some blocks the rails having been torn out by the city in its paving of its streets, and extensive repairs were required to place the railway in successful operation. For some five months the line had not been in operation. Said Hubinger thereupon began extensive repairs. He also applied to the city council of the city of Keokuk for a franchise for a street railway. At that time there was in force in said city an ordinance, known as "Special Ordinance No. 60," of date May 7, 1892, granting for the period of 30 years, to the said Gate City Electric Street-Railway Company, the exclusive right to operate an electric street railway over the streets of said city of Keokuk. By the said commissioner's deed to said Hubinger, said franchise passed to him as a part of the plant and property of said Street-Railway Company. Upon June 4, 1894, the city council of said city of Keokuk passed an ordinance, at the request of said Hubinger, granting to said J. C. Hubinger Company the "exclusive right to lay down, construct, and operate," for the period of 25 years, an electric street railway in the streets of said city. This ordinance is known as "Special Ordinance No. 73," and by its terms attempts the repeal of said "Special Ordinance No. 60," which had granted said Gate City Electric Street-Railway Company the right to operate an electric street railway in said city. Special Ordinance No. 73, by its terms, was not to become effective until accepted by J. C. Hubinger Company, in the manner therein provided. This acceptance was duly given according to the terms of the ordinance. Appeal from the order confirming said sale to said Hubinger was duly taken to the supreme court of Iowa, which, upon January 23, 1896, rendered

its decision, reversing the action of said superior court in confirming said sale. Said Hubinger having filed a petition for rehearing, action was not had by said supreme court thereon, until in the June following, when petition for rehearing was overruled, and writ of procedendo issued from said supreme court, and was filed in said superior court on June 10, 1896. Pending action on said petition for rehearing, said J. C. Hubinger, on April 10, 1896, conveyed with full covenants of warranty, to said J. C. Hubinger Company, the plant and property which had been conveyed to him by the commissioner's deed. After said filing in said superior court of said procedendo, said Trust Company tendered to said John C. Hubinger the amount by him paid on his said purchase, to wit, $10,000, and demanded restoration of the plant and property turned over to him by said receiver, under his said purchase as above stated. Said Hubinger failing and refusing to so restore same, the Trust Company began this action, viz. on September 14, 1896.

James C. Davis and W. J. Roberts, for plaintiff.
John E. Craig and J. H. Anderson, for defendant.

WOOLSON, District Judge (after stating the facts).  This is an action in personam.  The petition does not in any wise seek to interfere with the status of the plant and property conveyed to defendant Hubinger, by the deed executed in his favor by the commissioner of the superior court.  The petition recognizes and asserts that after the plant and property of the Street-Railway Company had been turned over to said Hubinger, upon confirmation of sale to him, and before procedendo issued on the judgment of reversal in the supreme court of Iowa, said Hubinger had so dealt with said plant and property, so changed its situation and condition and its legal title, in short had so destroyed the plant and property as to its entirety, as that plaintiff was thereafter powerless to expose same again to sale on any execution that might be issued under and in accordance with the decree of the superior court as entered in the foreclosure suit.  The Trust Company therefore ask herein, against said Hubinger, judgment for the value of the plant and property so turned over to him, less the $10,000 by him paid into the superior court, and which was to be applied in discharge of liens, etc., which had been established as having priority to the lien of the trust deed of said Trust Company.

The pressure of imperative official duties will not permit any extended attempt to present the grounds and arguments on which the decision herein is based.  Counsel have presented this case orally and by briefs, with the care and completeness which its importance justly demands.  I have given much time to the consideration of the views thus presented, and to an examination of the cases cited as controlling authorities or precedents.  Counsel, in behalf of each party, have furnished me with lengthy findings of fact, which I am requested to find.  So far as I have deemed them sustained by the evidence and in any wise proper to be stated as such, I have given findings on the points requested, perhaps with a fullness of detailed statement not altogether necessary, and of doubtful propriety to be contained in such fact findings.  It has, however, seemed due to counsel and clients that, so far as I could, I should embody in such findings the facts as, in my judgment, the evidence has proven them on each of the points requested.  Counsel on either side may regard their requests for findings as refused.

The discussion of the legal propositions presented by counsel deserve more than passing notice. Except for the imperative demands which other duties press upon me, I should have given the reasons impelling me to the conclusions reached on each of the important legal propositions presented. The comparative novelty, as well as the importance, of some of the questions presented for determination, and the ability and force with which counsel have presented them, would abundantly justify a somewhat extended consideration. I deeply regret that I may not attempt this. But I recognize, as urged by counsel on submission of the case, that the situation of the parties with regard to the property involved will not permit delay in decision, except as delay becomes unavoidable. I therefore present the findings and conclusions as briefly as I am able.

I delay, however, to quote a sentence from brief of counsel for defendant, which presents on one point the position of defendant. On page 31 of defendant's brief it is said:

"Defendant concedes there was, in fact, no sale of the property, and that his possession of the property was under the superior court, and that he holds what he bought subject to the order of the court, to be delivered upon payment to him of the amount he paid and the improvements he put in the property, which were necessary to put it in shape to earn something."

But defendant, at the commencement of this action, held none of the plant and property which had been turned over to him by the receiver, upon confirmation by the superior court of the sale to him. In the April following the adverse decision of the supreme court (which decision was reached in January, 1896), the defendant aliened the entire plant and property. He holds the legal title to none of it. The municipal franchise which he bought at the sale under the foreclosure decree he surrendered as part consideration for the franchise granted, at his request, to J. C. Hubinger Company. Many blocks of road which he received he has removed, —destroyed as a part of the railway. If otherwise practicable, a resale of the car and track property described in the decree, and which was turned over to him by the receiver, must be on a mere junk basis, because the franchise to operate the same on the streets of the city has been repealed at his instance. Unless bought by the holder of the franchise, granted at his instance to J. C. Hubinger Company, that property could not be operated as a street railway. Giving to this franchise repeal full force, it results that whoever—except, alone, the holder of the J. C. Hubinger Company franchise—bought the tracks must remove them from the streets. The tracks would have no status there as such, and might not be operated, with the J. C. Hubinger Company exclusive franchise outstanding. With the evidence so conclusively showing his inability to restore, defendant may not with success present a statement of his willingness.

Among other points forcibly urged on behalf of defendant Hubinger are included references to certain statutes of Iowa, which perhaps should be noticed. At some length, counsel for defendant have presented their view of the statutes of Iowa relating to allowances to

good-faith occupying claimants for improvements and betterments of property purchased at judicial sale.    In my judgment, these statutes have no application to the present action.    If this action proceeded against the property described in the decree, and attempt was made to take possession thereof, there would be great force in the position of counsel.    But since this action is purely personal, seeks only a money judgment, and does not attempt to disturb either title to or possession of the property, these occupying claimant statutes have no application to the present action.

It is urged that section 3199 of the Code of 1873 of Iowa, in force at date when decree in foreclosure suit was entered, and continuously since, is a protection to defendant herein.    The section provides:

"Sec. 3199. Property acquired by a purchaser in good faith under a judgment subsequently reversed shall not be affected by such reversal."

The argument proceeds on the theory that defendant Hubinger was a purchaser in good faith at the commissioner's sale, and that the reversal by the supreme court of the confirmation of such sale may not, under the provisions of the section quoted, affect such property in his hands.

It may not be disputed that in one respect plaintiff Trust Company assumed the risks as to condition of property, pending appeal.    Had it promptly filed a supersedeas, we may assume that there would have been no sale under the foreclosure decree, and the property would not have been turned over to defendant.    But a supersedeas was not made, by statute, a prerequisite to a valid appeal.    Now, since such bond was not essential to an appeal, plaintiff might elect to give or to decline to give it.    Had the supersedeas been given (I assume for the argument that the order of confirmation of sale was properly subject to supersedeas on appeal), the property, then idle, would have remained in the receiver's hands, and probably without being put into operation, and would have been subject largely to rapid deterioration.    Therefore, when decision was had on the appeal, the property would probably have been of much less value than at the time of the sale to which the appeal related.    If, however, the property passed into the hands of the purchaser, the probabilities were that it would be preserved, and substantial value remain until decision on the appeal was obtained.    Besides, the road, in active operation, would have preserved or added a value to its franchise not obtainable had the road remained idle.    Thus, it may be concluded that the situation, at time of appeal, was not such as to make, under then existing circumstances, the failure to file a supersedeas count heavily against the Trust Company on its appeal from the order confirming said sale.

But the judgment under which the property in question was sold was not reversed.    It stands to-day as valid as on the day it was rendered.    Not a word or syllable of its contents has been changed by the decision of the supreme court had on the appeal against defendant Hubinger.    Indeed, Hubinger was not and is not a party to the action in which said judgment was rendered.    Had he so desired, he could not have appealed from such judgment, nor could he properly have been a party to an appeal therefrom. So that, since he was appellee in the hearing in the supreme court,

the appeal could not have been from the judgment under which the property was sold. What, then, was the nature of the appeal? Upon such appeal there were ranged on one side the plaintiff Trust Company, the mortgagor Street-Railway Company, the holders of the bonds, and some of the parties in whose favor the judgment had decreed liens as precedent to that of the trust deed. In the foreclosure suit these parties had held relations antagonistic to each other. On this appeal their interests lay together. Upon the opposite side of the appeal was defendant Hubinger. The opinion filed by the supreme court in rendering decision of reversal shows that no portion or provision of the judgment and decree, rendered in the foreclosure suit, was attacked in the appeal. The entire subject of the appeal related to the order which confirmed the commissioner's sale to defendant Hubinger. The appeal was not, therefore, from a "judgment subsequently reversed." Nor was nor is the property which was turned over to defendant Hubinger, under said order of confirmation of sale, "property acquired by a purchaser in good faith under a judgment subsequently reversed." Defendant Hubinger was not a stranger to said appeal. The "purchaser in good faith" generally occupies such position. Here defendant Hubinger was the active resistant—the only person resisting—on said appeal. He alone reaped advantage and benefit if the appellate court should affirm the order of confirmation and the sale remain undisturbed. This appeal related only to a portion of the doings of the commissioner appointed in the foreclosure decree, with reference to the enforcement of said decree. As to such doings and the order of court thereon, defendant Hubinger was not a purchaser in good faith, under said section 3199, as construed by the supreme court of Iowa. And whether the question be solved by holding that the section only applies to reversals of judgments which are the foundation or authority for the sales under which the property was acquired, or that such section only relates to purchasers in good faith, with reference to the matter appealed from, the same result must follow,—the section does not apply to the situation as disclosed by the evidence in this action. Besides, as heretofore stated, this action is purely in personam. No attempt is herein made to affect the present condition, possession, or title of the property which the defendant acquired under the sale by the commissioner.

Upon the question of the value of the property, I deem it proper to make a few suggestions. The evidence introduced touching the value of this street-railway plant in May, 1894, is exceedingly contradictory, but perhaps not greatly more contradictory than might be expected when we consider the differing standpoints from which the various witnesses arrive at its value, and also the peculiar condition at that date of this plant, as to its roadbed, overhead construction, motive power, and rolling stock. The months in which the railway had been without operation produced seeming depreciation greatly beyond that actually occurring. But the evidence plainly indicates that disuse produces a more rapid depreciation of value than operation, with the repairs ordinarily connected there-

with, would have produced. This street-railway plant is shown to have had a somewhat peculiar history. In 1891 and 1892 it was largely reconstructed, and then mortgaged. The bonds ($85,000) for which the present plaintiff is trustee were issued with reference to the value of the road as then estimated by parties having general familiarity with such values. The fact now plainly appears, however, that the road, considered without reference to the value of its municipal franchise, was then of an actual value, much less than the face of the bonds issued. After 1891, and up to 1894, the road experienced a varied existence, all of which tends to establish the fact just stated. In the introduction of evidence relating to value in May, 1894, the court permitted to both parties a wide range. The value of the plant in 1892 (at the time when plaintiff's trust deed was executed), the nature and value of the improvements thereafter placed on the plant up to the date of transfer to the defendant, and the improvements made thereto by defendant, were given upon both sides with fullness of detail, as also the elements which were claimed on either side as constituting deterioration in condition and depreciation in value. Any attempt at harmonizing this evidence, and giving the exact grounds on which I base the value at which I have arrived, will subserve no useful purpose, and other pressing duties forbid the attempt. The pleadings filed in said superior court upon August 12, 1896, and verified upon August 11, 1896, by the oath of defendant Hubinger, state that after the transfer, by the receiver, to said Hubinger, of this street-railway plant, there had been expended, for improvements and repairs in putting the plant in operative condition, the sum of $1,560, and said Hubinger, in such pleading, names that amount as the sum which he therein claims should be repaid on account of such improvements. In another pleading, filed August 12, 1896, in said superior court, on behalf of J. C. Hubinger Company, and verified August 11, 1896, by the oath of J. C. Hubinger, the value of the "betterments and improvements" made is stated at $4,138. This seeming inconsistency in these two verified statements is perhaps to be explained by the fact that, in the pleading last above described, the value of certain track appropriated is stated at $2,600. If this $2,600 is taken from the $4,138, there is left $1,538 as net value remaining of improvements so made, which brings the two pleadings in substantial accord as to value of improvements so made after the plant passed into the defendant's hands. By an amendment to the last-named pleading, verified by J. C. Hubinger on October 15, 1896, and filed on same date in said superior court, there are stated as made, "to the cars and electrical appliances, improvements and repairs not set out in original petition," which are given as of the value of $2,160.32. Thus far the said improvements would aggregate, on statement of defendant, to $3,720.32. Perhaps the additional statement should be made that in said amended pleading an interlineation follows the extract above given that "value of improvements and betterments to said 39 blocks so repaired was $106 per block, or $4,134 in all." But this is so inconsistent with the above-given statements, as contained in said original pleadings,

that I cannot reconcile same, and therefore accept the values of improvements claimed as that originally given, viz. the aggregate claimed as made after road passed into defendant's hands, as being $3,720.14. If this $4,134 was added, the aggregate would be $7,-854.32, and I fail to find anywhere in the evidence that which substantiates such an aggregate.

Upon April 10, 1896, the defendant J. C. Hubinger, by deed with full warranty covenant, conveyed this plant, in its thus improved condition, to J. C. Hubinger Company, at an expressed consideration of $100,000. While it might be unjust to defendant to hold this expressed consideration as the actual market value which the defendant then placed on this plant at the date of his said conveyance, yet it is not unjust to him to hold that this conveyance abundantly proves that, at its date, he regarded the plant as of large value. To hold otherwise would, in effect, be to declare that defendant intended such expressed consideration to be a deceptive or fraudulent consideration. He had expended for such plant as follows:

Paid on transfer to him......................................... $10,000 00
" balance Illinois Steel, etc., Co. claim................ 828 50
" in betterments and repairs............................... 3,720 33
                                                                            ————————
Total expended ................................................ $14,548 83

And, in his said conveyance, defendant conveys, with full warranty of title, this very plant for the expressed consideration of $100,000. This conveyance, it may be noted, was so executed by him after the supreme court of the state had reversed the order of confirmation of sale of the plant to him. And no facts appear in the evidence which would justify the court in finding that outside or surrounding circumstances had given to this plant such greatly increased value. Indeed, the evidence introduced would compel the contrary finding.

We may note, also, that the supreme court of Iowa (65 N. W. 982) had the question of value of this plant under consideration on the appeal hereinbefore spoken of. That court was determining whether the confirmation of the sale, by the commissioner of said superior court, of this railway plant, to defendant, Hubinger, for $10,000, should be sustained. While the opinion of the court does not expressly determine that such purchase price was so grossly inadequate as to shock the conscience, yet the court had under special consideration, upon evidence formally presented by either side, the value of the plant, and the opinion states:

"This property cost some $60,000 or upward, and the showing preponderates that it is now of three times the value of the present bid, or more."

On this appellate hearing, the present defendant was the appellee, and opposed to him were "the plaintiff [plaintiff in the present action], the defendant street-car company, all of the bondholders, and some others, including interveners." It may therefore be safely assumed that the question of value of plant, at date same was turned over to defendant Hubinger, was fully presented, since the

decision of that question was to control the supreme court in affirming or reversing the confirmation of the sale to defendant Hubinger.

Under the evidence submitted, I find as follows:

### Findings of Fact.

(1) Plaintiff, the Central Trust Company of New York, now is, and at the commencement of this action was, a corporation organized under the laws of the state of New York, and a citizen of said state; and defendant John C. Hubinger then was, and now is, a citizen of the state of Iowa.

(2) The Gate City Electric Street-Railway Company, which was a corporation organized under the laws of the state of Iowa, had, prior to the foreclosure suit hereinafter mentioned, duly executed, in favor of plaintiff herein, as trustee, its certain trust deed, upon the plant and property situated in the city of Keokuk, Iowa, of said Street-Railway Company, to secure the payment of the bonds and coupons executed by said Street-Railway Company, and in said trust deed described.

(3) On the 2d day of January, 1894, plaintiff instituted in the superior court of the city of Keokuk, Iowa (which was a court of record and of full jurisdiction therefor), a suit to foreclose said trust deed, and to obtain, by the sale of said Railway Company property, the payment of the amount due and unpaid on said bonds and coupons. To said suit said Street-Railway Company was made defendant. Different lienholders were made parties to said suit, either as defendants or as interveners on their own petitions.

(4) During said foreclosure proceedings, a receiver of the said property of said Street-Railway Company was by said superior court appointed, who took possession of said property.

(5) Such proceedings in said foreclosure suit were duly had as that upon March 21, 1894, decree was by said superior court entered therein, finding then due and unpaid on said outstanding bonds the sum of $85,000; that the lien of said trust deed was a first lien upon all the property in said trust deed described, to wit, all the property, buildings, electric light plant, steam plant, machinery, engines, boilers, dynamos, electrical machinery, electrical lamps, and other electrical appurtenances, poles, wires, lines, together with all and singular the privileges, appurtenances, and franchises thereto belonging, and all personal property, of whatever kind and description, and wherever situated, and all the rights, privileges, and franchises, of the said Street-Railway Company, the description of said property embracing and intending to embrace therein, and subject to the lien of said trust deed, all the estate, property, and franchises that were owned by said Street-Railway Company at the date of said trust deed, and all such as was thereafter acquired by said Street-Railway Company, and also lot 10 in block 200 in said city of Keokuk, being occupied by said Street-Railway Company for its power house. The said description in said decree included all the rights, privileges, franchises, and property, of whatsoever description and wheresoever situated, which, at the date when said decree was entered, was owned by said Gate City Elec-

tric Street-Railway Company. Said first lien of said trust deed, as by said decree established, was, however, by said decree, made subject to the lien in said decree declared for the claims of certain of said parties to said suit, and the taxable and fixed costs in said suit, which costs and claims, as in said decree so established, amounted in the aggregate to about $10,840.

(6) Said decree appointed a commissioner to make sale thereunder, and report such sale to the said superior court for its consideration. Said sale was ordered to be made of said property as an entirety, and without redemption, statutory or otherwise.

(7) Upon April 28, 1894, said commissioner duly exposed said plant and property to sale, pursuant to the terms of said decree. At such sale, John C. Hubinger, defendant herein, bid for said property the sum of $10,000, and the same was struck off to said defendant for the amount of his said bid.

(8) Said sale to said defendant was thereupon by said commissioner duly reported to said superior court; whereupon objections to the approval thereof were filed by the plaintiff herein, as said trustee, by the American Loan & Trust Company, as holder of certain of said bonds, and by others. But, after due hearing, said sale was by said superior court confirmed, and said commissioner directed to execute deed for said property to said Hubinger upon the payment by him of said $10,000, which amount was so paid, and deed so executed, on May 10, 1894, and said deed approved by said superior court, and said receiver was ordered to turn over said plant and property to said Hubinger, which was accordingly done; and upon said May 10, 1894, said Hubinger took possession of said plant and property thereunder, and said receiver was by said superior court discharged.

(9) Said approval of said sale was duly excepted to by the said parties so filing objections, and thereafter notices of appeal to the supreme court of Iowa from order confirming sale were served on said Hubinger, viz. by W. J. Roberts, on June 27, 1894, and by plaintiff herein and said American Loan & Trust Company on August 25, 1894. Upon January 23, 1896, said supreme court (the opinion relating thereto being reported in 65 N. W. 982) reversed the action of said superior court in confirming the sale of said property to said Hubinger. Said Hubinger, within the period prescribed therefor by the rules of said supreme court, filed in said court his petition for a rehearing in said case, which petition was, to wit, about June, 1896, by said supreme court, denied; and thereafter, to wit, on the 9th day of June, 1896, writ of procedendo from said supreme court, in the matter of said appeal, was forwarded to said superior court, with directions to said superior court for "further proceedings to be had in said court not inconsistent" with the opinion of said supreme court.

(10) The $10,000 paid into said superior court on confirmation of said sale to said Hubinger was applied to payment of the liens which by decree, as aforesaid, were, with the costs of said suit, established as superior to the lien of said trust deed. and such liens were paid and wholly discharged thereby, save a lien due to the

Illinois Steel & Rail Company, on which last-named lien was paid $401.69. The remaining (unpaid) portion of said lien, to wit, about $828.50, was purchased, and is now held by said Hubinger. Save as affected by said balance of said claim of said Steel & Rail Company, the said trust-deed lien held by plaintiffs thereby became and is the first and prior lien as determined and established by said decree.

(11) Shortly after said plant and property was by said receiver turned over to said Hubinger, as hereinafter found, said Hubinger turned the same over to J. C. Hubinger Company, which was a corporation organized under the laws of the state of Iowa, and engaged in the operation of an electric light plant in said city of Keokuk, and of brickworks in or near said city. Said J. C. Hubinger Company was controlled by said J. C. Hubinger. The entire business of said corporation, and what was to be done by said corporation, was determined by defendant J. C. Hubinger, who was the active and absolute manager thereof. No conveyance or other transfer in writing of said property was executed by said J. C. Hubinger for nearly two years, and not until after the supreme court of Iowa had reversed the order of said superior court which confirmed said sale to defendant Hubinger, to wit, not until April 10, 1896, at which date said J. C. Hubinger formally executed conveyance of said property, with full warranty covenant, to J. C. Hubinger Company, for the consideration therein expressed of $100,000.

(12) When said suit for foreclosure was instituted, as above stated, and for some months prior thereto, and at the time when said property was so turned over to said Hubinger upon said confirmation of said sale, the street-railway line of the said Gate City Electric Street-Railway Company was not in operation. For a distance of some blocks, the rails were out of place, the same having been taken up by the city authorities in the progress of paving of the streets. And said railway system could not then be operated successfully except with the relaying of said blocks and the making of extensive repairs to different parts of its system.

(13) About May, 1892, by an ordinance known as "Special Ordinance No. 60," there was granted by the city council of the city of Keokuk, to the said Gate City Electric Street-Railway Company, the exclusive franchise or right and privilege to construct and operate an electric street railway in the streets of said city for the period of 30 years from said date. This franchise or right to construct and operate was included as a part of the property described in said trust deed, and, on sale under said decree of foreclosure, passed to the purchaser thereat, the same being a part of the property by said decree ordered to be sold as an entirety. At the time of the said attempted sale of said property by said commissioner, said franchise, right, and privilege, to wit, the ordinance granting same, remained unrepealed, and same was turned over to said J. C. Hubinger by said receiver, with the other property then so turned over, to wit, May 10, 1894. At the date of the passage of said Special Ordinance No. 60 there was in force, and has continuously since

said date remained in force, section 335 of the Revised Ordinances of said city of Keokuk (Roberts' Revision of 1887), as follows:

"Sec. 335. All ordinances, resolutions or other acts of the city council of Keokuk hereafter to be passed, adopted or done, whereby special privileges or immunities shall be granted to or conferred upon any person or persons, or contracts made with them, shall, unless the contrary be expressed on the face thereof, be subject to amendment or repeal at all times; and all such grants, unless the contrary be expressed, shall be taken to be made and accepted with reference to these provisions, and all rights which it declares and reserves to the city."

(14) After said plant and property had been turned over to defendant Hubinger, said Hubinger applied to said city of Keokuk for a franchise or right and privilege to operate an electric street railway on the streets of said city; and on June 4, 1894, said city, by ordinance known as "Special Ordinance No. 73," granted to said J. C. Hubinger Company, for a period of 25 years from said date, "the exclusive right to lay down, construct, and operate a street railway on all the streets of the city of Keokuk, with single or double track standard railway tracks," "with electric or other practicable motor power other than animal or steam power." Said ordinance contains, as a part of section 9 thereof, the following:

"This ordinance shall not interfere with any vested rights or privileges heretofore granted by the city of Keokuk to any person or corporation."

Section 18 of said ordinance provided that such ordinance should not take effect until accepted and agreed to by J. C. Hubinger Company in writing, filed with the city clerk. Such written acceptance was executed by J. C. Hubinger Company, and filed with the said clerk, within the time provided in said ordinance. Said section 18 also provided as follows:

"All ordinances or franchises given to street railway companies in the city of Keokuk, that conflict with this franchise are hereby repealed: provided, that none of the rights of the city of Keokuk under special Ordinance No. 60, under any other ordinance or agreement or under the laws of the state of Iowa, or any right existing prior to the passage hereof to make the cost of any paving heretofore ordered a lien or charge on or against the property formerly held by the Gate City Electric Street-Railway Company are in any way waived or forfeited by granting of this franchise or the passing of this ordinance or by any of the terms hereof."

(15) At the time said property was by said receiver turned over to said J. C. Hubinger, the system of tracks of said street railway had four terminal points. After said Special Ordinance No. 73 had been accepted by said J. C. Hubinger Company, and had taken effect, and before the supreme court of Iowa had reversed the order of the superior court which confirmed the sale to J. C. Hubinger important changes were made in said system of tracks. "Plat A," which is filed herewith, as a part hereof, correctly shows, by red lines thereon, the line of tracks of said street railway as the same existed when this property was by said receiver turned over to said Hubinger. This plat includes the (about five) blocks on whose streets the rails had been taken up in the progress of paving the streets by the city, as stated in paragraph 12 of these findings, and track had been made inoperative for street cars. "Plat B," filed herewith, and as a part hereof, correctly shows the line of tracks

as same existed after the changes above referred to had been made, and as said system of tracks was in existence when said procedendo from said supreme court was filed, as hereinbefore stated, in said superior court. The track had been by said defendant Hubinger taken up and removed from some of the blocks or streets, and new lines put down on other streets. Thus, the locality of the tracks and the line of street-railway travel were changed in some places, and extended in others.

(16) During the period included in the last paragraph, important changes were made by defendant Hubinger, or by his direction, in the motive power and cars connected with said street-railway system. The engines, dynamos, generators, shafting, and all the other machinery constituting power plant in the power house of said street railway, except two boilers, were taken out of said power house, and removed to the power house owned and used by J. C. Hubinger Company, in the operation of its system of street lighting in said city of Keokuk. From some of the cars so by said receiver turned over to said J. C. Hubinger, the motors were removed, and other motors substituted, with a view to economy in the use of electricity as the motor power; and one car was stripped and disabled for use in the passenger traffic. Meanwhile the roadbed of the street railway and the overhead trolley system, which in many places were in very poor condition when the property was turned over to defendant Hubinger, were repaired, to a large extent reconstructed, and the entire system brought into an effective, good-working condition of roadbed, trolley system, motive power, and cars.

(17) The changes noted in the two preceding paragraphs with regard to the line of track, power-house equipment, motors, roadbed, etc., were made after the property was turned over by J. C. Hubinger to J. C. Hubinger Company, but long prior to the conveyance executed by the former to the latter. This turning over by the former to the latter appears to have been substantially for the purpose of bookkeeping merely. J. C. Hubinger was the active part of J. C. Hubinger Company. The same is also true as to the procuring of the franchise to J. C. Hubinger Company from the city of Keokuk. In his amendment to answer filed herein, said J. C. Hubinger states that "the said John C. Hubinger made application to the city of Keokuk for a franchise to operate an electric street railway in the city of Keokuk; and said city, on the 4th day of June, 1894, granted to the said John C. Hubinger a franchise, being Special Ordinance No. 73," etc. In his original answer filed herein, in its fourth paragraph, said J. C. Hubinger states that "defendant * * * shows that he expended large sums of money in improvements and betterments to said road, and by putting the same in condition that cars might run upon its tracks, and that the value of said improvements in the 39 blocks which were so improved was of the value of four thousand one hundred and thirty four dollars, and he alleges said sum should have been tendered him," etc. In his pleading, entitled "Answer of J. C. Hubinger to the Application of W. J. Roberts, Intervener," filed in the said superior court August 12, 1896, said J. C. Hubinger states that "no notice was filed

or given to the said J. C. Hubinger of appeal to the supreme court until he had expended large sums of money in repairing and improving said property." There are blended in the pleadings such relations and actions of J. C. Hubinger and J. C. Hubinger Company as that the court is justified on these pleadings in finding the changes in the property, as found above, were made by defendant J. C. Hubinger.

(18) No supersedeas was given by any of the appellants in the matter of said appeal from the order of said superior court, confirming said sale of said street-railway property to said J. C. Hubinger.

(19) After said procedendo had been filed in said superior court, and before the institution of this action in this court, plaintiff herein tendered to defendant Hubinger the sum of $10,000, and demanded a return and restoration by him of the property by said receiver turned over to said Hubinger, under said order of said superior court upon confirmation by said court of said sale to said Hubinger. Said Hubinger failed and refused to return and restore said property, and demanded that there be tendered to him, in addition to said purchase price of $10,000, the further sums which had been expended, under direction of said Hubinger, in changing, altering, repairing, and putting into condition for active operation said street railway and its lines of track and other sundry and varied property.

(20) At the date when said decree of foreclosure was entered by said superior court, said Gate City Electric Street-Railway Company was insolvent, and its entire assets and property consisted of said street-railway plant and property described in said decree of foreclosure, which said entire plant and property were by said receiver turned over to said J. C. Hubinger under order of said superior court, as hereinbefore found; and said Gate City Electric Street-Railway Company ever since said entry of said decree has been, and now is, utterly insolvent.

(21) The property described in said trust deed to plaintiff from the Gate City Electric Street-Railway Company was of such a nature, and so situated and related in its entirety as a street-railway plant, as that its value largely depended on its being held together as an entirety. Such plant was an entire property. It was ordered to be sold as an entirety in said decree of foreclosure, was offered for sale as an entirety by said commissioner in said decree appointed to make sale thereof, and was by said receiver turned over as an entirety to defendant J. C. Hubinger, by whom it was attempted to be conveyed as an entirety to J. C. Hubinger Company.

(22) The changes and repairs in roadbed, line of track, trolley overhead construction, and other parts of said street-railway line, were made by defendant Hubinger in good faith, and in the belief that he was the owner, under his said purchase at said commissioner's sale, of said property, and after said sale had been confirmed by said superior court.

(23) When said procedendo from said supreme court was received by said superior court (which said procedendo is dated June 9, 1896,

87 F.—2

and was filed in said superior court on June 10, 1896), J. C. Hubinger Company held the legal title to that part (which was then in existence) of the street-railway plant and property which, under the order of said superior court, had by said receiver been turned over to said Hubinger, upon said confirmation of said commissioner's sale to him. And to no part of said street-railway property which had been so turned over to said Hubinger did said J. C. Hubinger, to wit, in June, 1896, hold the legal title; nor has he since said date held such legal title, so far as shown herein by the evidence.

(24) By the destruction of the said municipal franchise, which at date of commissioner's sale was held by said Gate City Electric Street-Railway Company, and by the changes and alterations in line of track, in power house, and other changes, the plant and property turned over as aforesaid by said receiver to said J. C. Hubinger had been so destroyed as to its entirety, as in said decree of foreclosure adjudged to be subject to plaintiff's lien, and as bid in by said J. C. Hubinger, and confirmed to him by said superior court, and by said receiver turned over to said Hubinger, as that the property so decreed, confirmed, and turned over as aforesaid was not in existence as an entirety, but said existence as an entirety had, by or under the direction of said J. C. Hubinger, been destroyed, and existed only in partial or fragmentary parts, as related to said entirety on which was fastened said lien of plaintiff, as established in said decree of foreclosure. And the plant and property described in and ordered sold by said foreclosure decree was not in existence, and could not be restored, as an entirety, at date when said procedendo was filed in said superior court, nor since said date, nor, as an entirety, could same be placed under the operation of said foreclosure decree, nor sold as an entirety thereunder; whereby said plant and property, as described in and conveyed by said trust deed, was greatly damaged, its value greatly depreciated, and the security created by said trust deed, and established by said decree in said foreclosure suit, practically destroyed and rendered valueless.

(25) Said plant and property of said Gate City Electric Street-Railway Company, which was turned over, on the said order of said superior court, to said J. C. Hubinger, under said confirmation of sale to him, was, at the date when the same was so turned over to him, of the fair market value of $33,600.

## Conclusions of Law.

1. The plaintiff, Central Trust Company of New York, by virtue of the execution of said trust deed to it by said Gate City Electric Street-Railway Company, and the judgment and decree of foreclosure entered thereon by the superior court of the city of Keokuk, Iowa, had a first and paramount lien upon the property and plant of said Street-Railway Company for the sum of $85,000, subject only to the amount of $10,840, being the amount which by said decree was fixed and determined as the aggregate of the liens entitled to have, and in said decree given, precedence to the said lien of said trust deed.

2. Said precedent liens having been paid off and discharged out of said $10,000 by defendant Hubinger paid into said superior court (excepting the balance of $828.50, remaining due and unpaid on the claim now held by said defendant of the Illinois Steel & Rail Company after said $10,000 had been applied by said superior court to the discharge of said precedent liens, etc.), the said lien in favor of plaintiff, Central Trust Company of New York, now is the paramount and only lien remaining under said decree.

3. As the trustee in said trust deed and the complainant in the decree so entered thereon in said superior court, said Central Trust Company, plaintiff herein, has the right to have and maintain this action, and to recover for any injury, damage, or appropriation done to the property upon which said decree is a lien, to the amount of its interest therein, not exceeding the amount specified in the said decree of said superior court.

4. The said property and plant of said Gate City Electric Railway Company having been mortgaged as an entirety, and ordered sold as an entirety under said decree, and having been as an entirety turned over to defendant Hubinger on order of said superior court upon confirmation of sale under said decree, and same having been dealt with, appropriated, and aliened by said J. C. Hubinger, as found in the foregoing finding of facts, said Hubinger is responsible in this action to said Central Trust Company of New York for the fair market value of said property as it was on May 10, 1894, when he took possession of same, less the said amount of said prior liens thereon, as fixed and established in said foreclosure decree, to wit, less the sum of $10,840.

5. Plaintiff herein is entitled in this action to judgment against defendant John C. Hubinger in the sum of $22,760, with interest thereon at the rate of 6 per cent. from the 10th day of June, 1896, that being the date when writ of procedendo from the supreme court of Iowa was filed in the superior court of said city of Keokuk.

Let judgment be entered accordingly against said defendant, and for costs of this action.

To each of which findings of fact and conclusions of law plaintiff and defendant duly and severally except.