## ADAMS v. MERCANTILE TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1895.)

No. 329.

1. COURTS—COMITY—POSSESSION OF RECEIVERS.

In 1893 one B. filed a bill in a state court, in behalf of himself and all other creditors, against the J. Ry. Co., to which the M. Trust Co., trustee of a mortgage upon the railway, was also made a party, in which bill he claimed a first lien upon the property of the railway company; alleged its insolvency, and the existence of numerous other liens on its property; and sought the appointment of a receiver and a sale of the road for the payment of liens. In September, 1893, the state court appointed a receiver of the railway, who, later in the same month, was discharged, by consent of parties. On November 17, 1893, a decree pro confesso was taken against the M. Trust Co. On March 6, 1894, after hearing on the answer of the railway company, the state court made a decree granting the prayer of the bill, and sending the case to a master to take an account of the indebtedness. On March 19, 1894, the M. Trust Co. filed its bill in the federal court for foreclosure of its mortgage on the J. Ry. Co.; and on the same day, on consent of the railway company, a receiver of its property was appointed by the federal court, who took possession of the road. On April 5, 1894, the state court again appointed one A. receiver of the railroad property in the suit brought by B. On May 7th, a decree pro confesso was entered against the railway company in the M. Trust Co.'s suit in the federal court. May 21st, A. filed his intervening petition in the federal court, seeking delivery to him, as receiver in B.'s suit, of the property then in the hands of the receiver of the federal court. *Held* that, as a matter of comity between the state and federal courts, the application should be granted, and the possession of the property, which was clearly necessary to the exercise of its jurisdiction, should be turned over to the state court.

2. SAME—EXCLUSIVE JURISDICTION OF PROPERTY—NECESSITY OF SEIZURE.

It seems that actual seizure is not always necessary in order to give exclusive jurisdiction over property to a court in which a suit affecting such property is pending, if possession of such property is necessary in order to give the full relief sought in such suit. Wilmer v. Railroad Co., Fed. Cas. No. 17,775, 2 Woods, 409–427, criticised.

This is an appeal from an order of the circuit court of the United States for the Northern district of Florida. The facts in this case are substantially as follows:

On the 19th of March, 1894, the Mercantile Trust Company, the appellee in this case, filed its bill in equity in the court below against the Jacksonville, Mayport & Pablo Railway & Navigation Company. This bill set forth that the said railroad company had issued 250 bonds, and executed a mortgage to the appellee, to secure the payment of these bonds, upon its entire line of

railroad and all of its property, of every nature and kind, including the income, tolls, rents, and profits; that 175 of said bonds had been sold, and were in the hands of bona fide purchasers for value; that the said railroad company had made default in the payment of interest, and that, under the terms and conditions of the mortgage or deed of trust, the trustee, the appellee here, had the right to take possession of the properties aforesaid, or to have a receiver appointed; that the said railroad company was hopelessly insolvent: that it had never paid any interest on its bonds, and was wholly unable to do so; that suits at law have been brought in the state court, in some of which judgments have been recovered, and that other of said suits are still pending; that the railroad property of the defendant was in a damaged and dilapidated condition; and that the interest of the bondholders required the appointment of a receiver,—and prayed for a decree for the foreclosure of the mortgage, and sale of the properties of the railroad company. That on the 19th day of March, on notice given to the defendant company, and on appearance by the attorney of that company, and his statement that there was no objection to application for a receiver, and that the best interests of the bondholders, creditors, and stockholders required the appointment of a receiver, and on the affidavit of Archer Harmon, who was then the president of the railroad company, to the same effect, the court appointed John L. Marvin receiver, with the usual powers and instructions. The receiver immediately gave bond, and filed his oath of office, took possession of the properties, and entered upon the discharge of his duties. On May 7th of the year aforesaid a decree pro confesso was entered against the defendant company.

On May 21, 1894, the intervener and appellant, Charles S. Adams, after due notice to counsel for complainant in this suit, and by leave of court duly obtained, filed his petition of intervention in said cause. The said intervener, Charles S. Adams, represented in his said petition that he had been appointed receiver of the railway and other property of the said defendant company by the circuit court for Duval county, state of Florida, in a suit therein pending, in which George F. Broughton had filed a bill in behalf of himself and all of the creditors of the said defendant company against the said company, and against the said Mercantile Trust Company, the complainant in this suit; that the said Broughton claimed to have a first lien upon the property of the said defendant company; that the said company was insolvent, and the president was misappropriating the revenues thereof; that on the 17th of November, 1893, a decree pro confesso had been entered against the said Mercantile Trust Company, and that on the 6th of March, 1894, the said state court had rendered a decree entitling said complainant Broughton to the relief prayed in and by his said bill, and referred the cause to a master to ascertain what amounts were due the creditors and bondholders of the company who might come in and prove their claims, and that a large number of said creditors had proved their claims in said suit; that the solicitors representing the said defendant company in the state court were the same as those representing the defendant in the federal court, and the counsel representing the Mercantile Trust Company in the federal court also signed the answer of the defendant company in the state court; that no notice was given of the application for appointment of receiver, except to H. H. Buckman, Esq., counsel for the defendant company in the said state court, who filed the consent hereinbefore referred to; that the bill in this cause did not inform the court that a creditor's bill was pending in the state circuit court, to which the Mercantile Trust Company, the complainant in the federal court, was a party defendant, and in which a decree pro confesso had been entered against said Mercantile Trust Company, and final decree entered thereon; that the said circuit court of the state of Florida was duly administering the property of the defendant company for the benefit of all its creditors; that on the 5th of April, 1894, the petitioner, Charles S. Adams, had been appointed receiver of all the properties of the defendant railway company, copy of which order was annexed to and made a part of said petition, as Exhibit A. The petitioner, Charles S. Adams, prayed the United States circuit court for the Northern district of Florida to make an order directing the receiver appointed by that court in the suit of the Mercantile Trust Company to turn over and deliver to said petitioner, as such receiver of the state court, all the properties of the said defendant railway company.

On May 30, 1894, Archer Harmon and others, claiming to be holders of bonds issued by the said railway company, filed an answer for themselves, alleging the said answer to be that of the Mercantile Trust Company, to the petition of Charles S. Adams. The record shows that the complainant the Mercantile Trust Company never did file any answer, over its corporate seal or by its counsel, to the said petition of Charles S. Adams, and that the said alleged bondholders had no authority of right to file their attempted answer to the said petition. The order of the court permitting the petition to be filed required "that the said Mercantile Trust Company be required to answer the same within ten days from the date of this order," to wit, on the 21st May. 1894.

On June 5, 1894, Charles S. Adams, intervener, in support of his petition, filed a certified copy of the record from the circuit court for Duval county, Fla., in the said suit of George F. Broughton against the said defendant the Jacksonville, Mayport & Pablo Railway & Navigation Company. This record from the state court shows that the bill was filed by Broughton, for himself and all the other creditors of the defendant company, against the said company and the Mercantile Trust Company. The bill recites the amounts due Broughton for his work and labor performed in the construction of the defendant's railroad on March 31 and October 25, 1892, to wit, $1,846.60, $1,660, and $1,310, respectively, and the history of his claims, and that they constitute a lien upon the property and franchises, under the statutes of Florida; that the defendant company had executed its deed of trust to secure an issue of $250,000 in bonds, and that none of said bonds were placed in the hands of the trustee until March 10, 1893; that a large sum of money was due to other persons for work and labor performed on and materials furnished to the said railway, all of which were a lien upon the property of the defendant company; that a number of suits at law have been commenced against the defendant company, and that the state and county taxes are due, and that the sheriff has levied on the road for the payment of the same; that the earnings and revenues of the company are being misappropriated by the president; that a sale of the road and all of the property of the defendant company would not bring enough to pay its debts; that a receiver be appointed, and an account be had of what is due the complainant and such other creditors as might come in and prove their claims; that the road be sold, and the proceeds be applied to the payment of the taxes and costs of the suit, and the residue to the payment of the claims proved as aforesaid.

The defendant railroad company filed its answer to the said bill, denying its indebtedness to the said Broughton, and denying all the other allegations in the bill, and the complainant Broughton filed replication to the said answer. On the 29th of August, 1893, an order was made, directed to the Mercantile Trust Company, requiring it to appear to said bill. On the 8th day of September, 1893, the state court heard the application for a receiver, and, upon consideration, appointed Charles S. Adams receiver, to take into possession said railroad, rolling stock, fixtures, rights of way, moneys, choses in action, books, papers, and terminal facilities, forthwith, and, further, directed said receiver to operate and run said road pending the litigation, and authorized him to borrow the sum of $3,406.50, or so much thereof as might be necessary, to pay taxes due by the said company, for which a levy had been made by the sheriff of Duval county. On the 22d day of September, by consent of parties to the suit, the receiver was discharged, and the railroad property was ordered turned over and delivered to the defendant railroad company, the cost and expenses incurred in the operation of the property being reserved for the further order of the court.

November 13, 1893, proof of the service by publication of said notice was made in said cause. On the 17th of November, 1893, the judge of the said state court entered a decree that the said bill be taken pro confesso as to the said defendant the Mercantile Trust Company, in default of plea, answer, or demurrer to said bill. On January 3, 1894, the cause was duly referred to an examiner to take testimony on the issues made by the bill and answer. After the evidence in said cause was fully taken, the said cause came on to be heard in the said state court on March 6, 1894, and on the same day the said court made its final decree. The said state court, in its final decree, found that the bill had been taken as confessed against the Mercantile Trust Com-

pany, and that, on the answer of said defendant railway company and the testimony taken, "it is ordered, adjudged, and decreed that the complainant have the relief prayed in and by his said bill"; and the cause was referred to a master to take and state an account of the indebtedness due those who may come in and prove their claims before the master, and that the master give notice to the creditors and holders of bonds, and that he report the same to the court, and the order in which the claims and bonds should share in the proceeds of the sale of the property. On the 6th of June, 1894, the petition of Charles S. Adams came on for hearing before the circuit court, and the prayer of the petition was denied and the petition dismissed. From this decree the intervener prosecuted his appeal to this court.

John C. Cooper, for appellant.
H. Bisbee and C. D. Rinehart, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The suit instituted by Broughton in the state court against the Jacksonville, Mayport & Pablo Railway & Navigation Company brought under the direct control of the court all the property of said railway company, to be administered for all entitled to share the fruits of the litigation. The possession and control of the railroad were absolutely necessary to the exercise of the jurisdiction of the court. The filing of the bill, and the service of process thereunder, was an equitable levy upon the property. Miller v. Sherry, 2 Wall. 237; Railroad Co. v. Pettus, 113 U. S. 116–124, 5 Sup. Ct. 387. Pending the proceedings in that court under the said bill the said railroad and property may properly be said to be in gremio legis. Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401; Railroad Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. 155. The Mercantile Trust Company was made a party to the suit, and, so far as the record goes, is bound by the proceedings had therein. Upon the face of the record, the subsequent institution of the suit to foreclose, in the interest of local bondholders, was for the purpose of evading, and practically ousting, the state court. While state and national tribunals are independent and separate, neither can impede or arrest any action the other may take, within the limits of its jurisdiction, for the satisfaction of its judgments and decrees. Amy v. Supervisors, 11 Wall. 136; Williams v. Benedict, 8 How. 107–112. The appellee relies upon the decision of Mr. Justice Bradley in the case of Wilmer v. Railway Co., 2 Woods, 409–427, Fed. Cas. No. 17,775, in which Mr. Justice Bradley says:

"The test, I think, is this: Not which action was first commenced, nor which cause of action had priority or superiority, but which court first acquired jurisdiction over the property. If the Fulton county court had the power to take possession when it did so, and did not invade the possession or jurisdiction of this court, its possession will not be interfered with by this court. The parties must either go to that court, and pray for the removal of its hand, or, having procured an adjudication of their rights in this court, must wait until the action of that court has been brought to a close, and judicial possession has ceased. Service of process gives jurisdiction over the person. Seizure gives jurisdiction over the property, and, until it is seized, no matter when the suit was commenced, the court does not have jurisdiction."

We have examined this case with care, and find that the question before Mr. Justice Bradley was whether the court could—and, if it could, whether it would—take property out of the possession of a receiver appointed by a state court; and in concluding his opinion he says:

"In differing from Judge Woods, we do so with much respect for his opinion. The question must be admitted to be one of some nicety, but we prefer that course which avoids collision with a state court, when it coincides with our own convictions as to the law."

The same case shows that, at a preliminary stage, Judge Woods (afterwards Mr. Justice Woods, of the supreme court), having before him the question of jurisdiction to appoint a receiver in a case where, after bill of foreclosure filed and injunction issued in the federal court, a receiver had been appointed in a state court for part of the property, reviewed the authorities, and said:

"Is actual seizure of the property necessary to the jurisdiction of the court? In my judgment, it is not. In this case I think the jurisdiction of the United States circuit court for the Northern district of Georgia first attached to the property, because the suit in that court was first commenced, and service of subpoena made, and because (1) one of the main objects of the suit was to obtain possession of the property, and such possession was necessary to the full relief prayed by the bill, and (2) because, by the service of the restraining order enjoining the defendant company from delivering possession of the trust property to any person except a receiver appointed by this court in this cause, the court acquired constructive possession, and from the moment of the service of the restraining order the property was in gremio legis. I think these positions are sustained by the authorities. I subjoin a reference to a number of cases, in all of which the subject under consideration is discussed, and in some of which the precise point is decided, and the views above expressed are sustained: Smith v. McIver, 9 Wheat. 532; Wallace v. McConnell, 13 Pet. 151; Peck v. Jenness, 7 How. 624; Williams v. Benedict, 8 How. 107; Wiswell v. Sampson, 14 How. 52; Taylor v. Carryl, 20 How. 583; Green v. Creighton, 23 How. 90; Freeman v. Howe, 24 How. 457; Chittenden v. Brewster, 2 Wall. 191; Memphis v. Dean, 8 Wall. 64; Taylor v. Taintor, 16 Wall. 370; New Orleans v. Steamship Co., 20 Wall. 392, 393; Atlas Bank v. Nahant Bank, 23 Pick. 489; Wadleigh v. Veazie, 3 Sumn. 165, Fed. Cas. No. 17,031; Ex parte Robinson, 6 McLean, 355, Fed. Cas. No. 11,-935; Bell v. Trust Co., 1 Biss. 260, Fed. Cas. No. 1,260; Bell v. Railroad Co., 2 Biss. 390, Fed. Cas. No. 1,407; Parsons v. Lyman, 5 Blatchf. 170, Fed. Cas. No. 10,780; Stearns v. Stearns, 16 Mass. 171; Conover v. Mayor, etc., 25 Barb. 513; Clepper v. State, 4 Tex. 242; Thompson v. Hill, 3 Yerg. 167; Bank of Bellows Falls v. Rutland R. Co., 28 Vt. 478; Merrill v. Lake, 16 Ohio, 405; Ex parte Bushnel, 8 Ohio St. 601; State v. Yarbrough,, 1 Hawks, 78; Gould v. Hayes, 19 Ala. 448; High, Rec. 38–41, and note. Especial attention is called to the cases of Wiswell v. Sampson, Chittenden v. Brewster, and Bell v. Railroad Co., supra. An examination of the cases cited will show that actual seizure of property has not been considered necessary to the jurisdiction of the court in a case where the possession of the property is necessary to the relief sought. The commencement of the action and service of process, or, according to some of the cases, the simple commencement of the suit by the filing of the bill, is sufficient to give the court jurisdiction, to the exclusion of all other courts."

The views expressed by Judge Woods have been accepted and followed, in this circuit, at least, and we fully concur therein, as a correct exposition of the law, and one particularly applicable to the present case; while the decision of Mr. Justice Bradley, doubted by himself, is open to the objection that thereby jurisdiction is frequently made to depend upon a race between marshals and sher-

iffs, likely to result in unseemly controversies between the state and federal courts. Considering the present case, however, as one in which neither the appointment nor the ousting of a receiver of any court is involved, but as presenting a question of comity between state and federal courts, we are of opinion that the court below erred in not granting the application of the receiver of the state court for the possession of the property which is so clearly necessary for the further exercise of that court's jurisdiction, and to which possession we think it so clearly entitled. The decree appealed from is reversed, and the cause remanded to the court below, with directions to enter an order and decree in favor of the intervener, restoring to his possession, and to the possession of the state court, the property of the Jacksonville, Mayport & Pablo Railway & Navigation Company.