ILLINOIS STEEL CO. v. PUTNAM et al.

(Circuit Court of Appeals, Fifth Circuit. May 28, 1895.)

No. 348.

1. RAILROAD COMPANIES—STOCKHOLDERS' BILL FOR RECEIVER — PROPERTY IN GREMIO LEGIS.

Where a stockholders' bill asks for the appointment of a railroad receiver, not with a view to enforcing any lien or debt, but merely to secure a better management of the property until arrangements can be made for discharging its debts, the mere filing of the bill and service of process do not draw the property of the company into the possession of the court, so as to prevent the company, prior to the appointment of a receiver, from surrendering steel rails lying along its right of way, but not yet attached to its road, to the creditor from whom they were purchased, as part of a larger lot, in partial extinguishment of debt for the purchase price.

2. INSOLVENCY—FRAUDULENT PREFERENCES—CORPORATIONS.

The surrender by a railroad company of certain steel rails and other property lying upon its right of way, but not yet attached to the road, to the creditor from whom they were purchased, as part of a larger lot, in partial extinguishment of the purchase price, is not a fraudulent or unlawful preference, though made pending a motion for the appointment of a receiver under a stockholder's bill which seeks to procure a better management of the property until its debts can be discharged by the stockholders.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

This was a petition by C. M. Putnam and Sam Lazarus, receivers of the Texas, Louisiana & Eastern Railway Company, against the Illinois Steel Company, to recover from it certain steel rails and other property which were purchased of it by the railroad company, with other rails and materials, but which had been surrendered to it by the managers of the railroad company under an agreement for the partial extinguishment of the purchase price. The circuit court held—confirming the report of a special master—that the receivers were entitled to the property, and ordered that possession be taken accordingly. The Illinois Steel Company appeals.

R. S. Lovett and E. Parmalie Prentice, for appellant.

F. C. Dillard, H. L. Lazarus, I. D. Moore, and J. H. Luce, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge. In April, 1893, the Texas, Louisiana & Eastern Railroad Company purchased of the appellant, the Illinois Steel Company, about 700 tons of steel rails, with sufficient and suitable fastenings for placing the rails in its railroad track. These rails were delivered to the railroad company, and about 400 tons of them were placed in its track before November 29, 1893. On that day the president and manager of the railroad company, in the name of the company, gave to the appellant a chattel mortgage on the rails not yet laid in the track, but piled on the right of way of the railroad, to secure the unpaid balance of the purchase money of the 700 tons of rails. On the 25th day of December, 1893, Samuel A. Walker exhibited his bill against the railroad and against its president, Charles M. Putnam, to one of the judges of the circuit court for the Eastern district of Texas, averring that the complainant was a stockholder and bondholder of the railroad, and presenting the condition of the corporation, its property and management, asked for the appointment of a receiver to take charge of the affairs of the corporation, and to manage, operate, and maintain its line of road "until such time as it is meet that the corporation, through its legitimate and bona fide stockholders, shall, upon discharging its obligations to its creditors, assume possession thereof." The judge directed that the bill be filed, and notice be given the defendants to show cause on the 18th of January, 1894, why the relief prayed for should not be granted. The bill was filed December 29, 1893, and the required notice to defendants was served on them the next day. On the 15th day of January, 1894, the defend-

ant railroad company, by its president and manager, by written instrument duly signed, witnessed, and sealed, surrendered to the agent of the appellant the possession of all the rails and appurtenant fastenings remaining unused on the 29th of November, 1893, and included in the chattel mortgage of that date, with the right at any time, upon the refusal of the railroad to pay its indebtedness to the appellant, to rescind the original contract of sale, as to so much of the material thereby surrendered, for which, on such rescission, specified credit should be given by the appellant on the debt due it by the railroad. The rails and other material thus surrendered were on the same day (15th January) taken into the actual custody of the agent of appellant, and removed from the right of way of the railroad, where the material had been stored or piled, and were put on other ground, not under the control of the defendant railroad. The appellees were appointed receivers February 1, 1894. They claimed the surrendered material, as part of the property of the defendant railroad. The ownership of these 300 tons of steel rails and fastenings is the matter in controversy in this case. In the original transaction between the appellant and the railroad company, the property in these rails completely passed. It is not claimed that any lien for the unpaid purchase money was fixed on any of these movables prior to the giving of the chattel mortgage, on the 29th of November, 1893.

Appellees insist that Charles M. Putnam, as president and manager of the railroad company, had no power to make that chattel mortgage, because not authorized by a duly passed and registered resolution of the company's stockholders, and that he had no power on the 15th of January, 1894, to surrender the property to the appellant, and to provide for a rescission of appellant's sale made in April previous, and completed by delivery, because the railroad corporation was at that time insolvent, and the transaction was an unlawful preference of one creditor, and also because at that time the property had been drawn into the custody of the law by the filing of the stockholders' bill on the 29th of December, and service of notice on the defendants. If neither of these objections to the transactions had on the 15th of January is sound, it is wholly immaterial whether the objection to the chattel mortgage is sound or unfounded. Where a bill in equity brings under the direct control of the court all the property and estate of the defendants, or of certain named defendants, or certain designated property of all or of either of the defendants, to be administered for the benefit of all entitled to share in the fruits of the litigation, and the possession and control of the property are necessary to the exercise of the jurisdiction of the court, the filing of the bill and service of process is an equitable levy on the property, and pending the proceedings such property may properly be held to be in gremio legis. The actual seizure of the property is not necessary to produce this effect, where the possession of the property is necessary to the granting of the relief sought. In such cases the commencement of the suit is sufficient to give the court whose jurisdiction is invoked the exclusive right to control the property. Adams v. Trust Co., 66 Fed. 617,

and cases therein cited. Is the stockholders' bill here such a suit, as to the steel rails in controversy? We think it is not such a suit. We call it a "stockholders' bill," because it only seeks to secure the better management of the property, and expressly disclaims any right or wish to foreclose any lien or enforce any debt against the property of the defendant corporation. No specific mention is made of these steel rails, or necessary reference made to them, either in the bill filed on December 29, 1893, or in the order appointing the receivers, passed on the 1st of February, 1894. It does not appear in the original bill or the amended bill, nor in the subsequent order of the court, that the possession of this property was necessary to the exercise of the jurisdiction of the court. The contention that the surrender of this property as security for, or in part satisfaction of, the debt incurred by the purchase of it, and of a larger lot obtained from the appellant at the same time, was an unlawful preference of one creditor, is not supported by the authorities relied on, or by sound reasoning. The railroad company was not proposing or contemplating going out of business. The object of the bill was not to wind up its affairs, but to secure an opportunity for it to get into better shape, by the voluntary adjustment and satisfaction of its debts. No suggestion is made that appellant's claim of debt was not a just one, for an amount largely more than the value of these materials surrendered. It is not suggested that the credit stipulated for was not the fair and full value of the material at the time and place of the surrender. It could hardly be suggested by the receiver Charles M. Putnam that the settlement which President and General Manager Charles M. Putnam made pending the application for his appointment as receiver, or for a receiver, in answer to which he was appointed, was not fairly and judiciously made. While, if we exclude from our view the chattel mortgage, it is true that the appellant had no lien on this material it had furnished, and for which it had not been paid, the common conscience, uncharged and unobscured by technical distinctions, approves of the surrender of these materials to the unpaid original vendor. There is nothing in this case to take the transaction out of the operation of the law of natural justice. The decree appealed from is reversed, and the cause is remanded to the circuit court, with directions to pass a decree confirming the right of the Illinois Steel Company, appellant, to all of the rails, frogs, spikes, and other railroad iron and steel intended for use in laying railroad track, surrendered and delivered to the appellant under the contract of 15th of January, 1894, and providing that if any of the same has been put by the receivers into the railroad track, or has been otherwise disposed of by the receivers, so that it cannot be now restored to the appellant, then, for so much as has thus been used or disposed of, the receivers shall pay the appellant the market value thereof prevailing at the works of the Illinois Steel Company on February 25, 1894, plus the freight on said rails and fastenings paid by the Illinois Steel Company, and appropriating to such payment the amount deposited in the Merchants' & Planters' National Bank of the City of Sherman under the agreement of 16th of March, 1894.

ure of the court, and that all the citizens of a county not then registered as voters should be denied the right of suffrage during that pleasure. It seems to me that the mere statement of this view of the case shows that the injunction was improvidently granted.