## HUBINGER v. CENTRAL TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1899.)

### No. 1,099.

1. MORTGAGES—INJURY TO MORTGAGED PROPERTY—RIGHT OF ACTION OF MORTGAGEE.

A mortgagee may maintain an action at law for an injury wrongfully done to the mortgaged property, whereby its value is lessened, and his security impaired, provided he sustains an actual loss thereby, and the measure of his recovery is the amount of such loss.

2. FEDERAL COURTS—JURISDICTION—PENDENCY OF SUIT IN STATE COURT.

The pendency in a state court of a suit to foreclose a mortgage does not preclude a federal court from entertaining jurisdiction of an action at law by the mortgagee to recover damages for the conversion or destruction of the mortgaged property, which amounts to an abandonment by the plaintiff of any claim to the property itself.

3. MORTGAGES—REVERSAL OF ORDER CONFIRMING SALE—IOWA STATUTE.

The Iowa statute (McClain's Ann. Code, § 4429), providing that property acquired by a purchaser in good faith, under a judgment subsequently reversed, shall not be affected by such reversal, does not apply to a case where an order confirming a sale of property under a decree of foreclosure is alone appealed from and reversed, the purchaser being a party to the appeal, and on such reversal it is the duty of the purchaser to restore the property.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

This is a suit wherein the Central Trust Company of New York, the defendant in error, hereafter termed the "Trust Company," sued John C. Hubinger, the plaintiff in error, in an action which is essentially an action at law to recover damages for the wrongful disposition and destruction of property which at one time constituted an electric street-railway plant in the city of Keokuk, Iowa, the same being the property of the Gate City Electric Street-Railway Company. A jury was waived, and the case was tried by consent before the court, which made a special finding of facts. From this finding we extract the following facts, in substance, which are all that are deemed essential to a proper understanding of the case: The Central Trust Company, as trustee, filed a bill to foreclose a deed of trust which was executed by the Gate City Electric Street-Railway Company of the city of Keokuk, to secure an issue of bonds amounting to $85,000, which deed of trust covered all the property and franchises of said street-railway company. The suit was brought in the superior court of the city of Keokuk, Iowa, and a decree of foreclosure was entered therein on March 21, 1894. At a sale which was made under said decree by a master on April 28, 1894, the mortgaged property was purchased by John C. Hubinger for $10,000, which sum was not sufficient to pay certain preferential claims that had been allowed in the foreclosure proceedings, and left nothing to be applied on the mortgage indebtedness. The sale was approved by the superior court, notwithstanding objections made thereto by the Trust Company, and the property so sold was delivered to Hubinger on May 10, 1894. From the order approving the sale the Trust Company took an appeal to the supreme court of Iowa, on June 27, 1894, without giving bond. In the latter court the order of the superior court confirming the sale was reversed, on January 23, 1896, and thereafter, on June 9, 1896, a writ of procedendo issued from said supreme court, directing further proceedings in the foreclosure case, not inconsistent with the opinion of the supreme court of the state. 96 Iowa, 646, 65 N. W. 982. Shortly after the property had been turned over to Hubinger, as heretofore stated, he surrendered the possession thereof to the J. C. Hubinger Company, a corporation then engaged in the operation of an electric light plant in said city of Keokuk, which was controlled by said J. C. Hubinger, and on April 10, 1896, after the supreme court of the state had reversed the order of the

superior court confirming the sale, said Hubinger made the transfer effectual by conveying said property, with full covenants of warranty, to the J. C. Hubinger Company for a consideration therein expressed of $100,000. After Hubinger had acquired the property aforesaid at the sale aforesaid, he applied to the city of Keokuk for a franchise to operate an electric street railway on the streets of said city, and secured the passage of an ordinance known as "Special Ordinance No. 73," whereby there was granted to the said J. C. Hubinger Company, for a period of 25 years from said date, "the exclusive right to lay down, construct, and operate a street railway on all the streets of the city of Keokuk, with single or double track, standard railway tracks, with electric or other practicable motor power, other than animal or steam." This ordinance was duly accepted by the J. C. Hubinger Company, and by its terms operated as a repeal of a previous ordinance, No. 60, granted to the Gate City Electric Street-Railway Company, under which ordinance it had previously operated its railway in the streets of the city of Keokuk. The deed of trust in favor of the Trust Company, to which reference has been made, covered the franchises granted by said ordinance No. 60. After procuring the passage of ordinance No. 73, and the repeal of ordinance No. 60, important changes were made by the defendant in the location of the tracks of the Gate City Electric Street-Railway Company, as they existed when the deed of trust was executed. These changes consisted in extending the tracks at certain places, and in taking up portions of the track on some of the streets, and laying the same on other streets, so as to conform to the requirements of the new ordinance No. 73. All of the machinery originally used to operate said railway, such as engines, dynamos, and generators, with the exception of two boilers, were also removed from the power house of the railway company to a power house which was owned and used by the J. C. Hubinger Company. Before the commencement of this suit, and after the reversal of the order approving the foreclosure sale, the Trust Company tendered to the defendant the sum of $10,000, which he had paid for the mortgaged property at the foreclosure sale, and demanded its return; but the defendant refused to restore it unless he was paid all further sums which he had expended in changing, altering, and repairing it, and sundry other sums which he had also expended. The trial court further found that by procuring the repeal of the old ordinance No. 60, and by the changes which the defendant had made in the mortgaged property while the same was in his possession, and by dismantling the old power house, the identity of the mortgaged property had been destroyed, so that it was no longer in existence in its entirety, and could not be restored to the Trust Company. It also found that the fair market value of said property, when the same was turned over to the defendant, was $33,600. In pursuance of these findings, the trial court rendered a judgment in favor of the Trust Company, the plaintiff below, for the sum of $25,271.18, which sum represents the market value of the mortgaged property as assessed by the court, less the price paid therefor at the foreclosure sale, interest having been computed on the balance at the rate of 6 per cent. per annum from and after June 10, 1896, until the rendition of the judgment. The writ of error brings this judgment before us for review.

James H. Anderson and John E. Craig, for plaintiff in error.
James C. Davis and William J. Roberts, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The case having been tried before the circuit court without the intervention of a jury, and the facts having been found specially, the only question open for consideration in this court is whether the facts as found by the trial judge are adequate to sustain the judgment. The findings of the trial judge, as a matter of course, cannot be reviewed. The judgment is challenged by counsel for the plaintiff in error, as we understand, on two principal grounds:

First, because the Trust Company, as it is said, had no such title to the mortgaged property which was bought by the defendant Hubinger at the foreclosure sale as will enable it to maintain an action at law against the purchaser for the wrongful disposition or destruction of the property, or for his refusal to surrender it to the Trust Company upon demand; and, second, because the superior court of the city of Keokuk, in which the suit was brought, has, as it is claimed, exclusive jurisdiction of the controversy, and all matters connected therewith or incidental thereto.

Concerning the first of these contentions, it may be said that, while it is true that the Trust Company was not the absolute owner of the property in controversy, nevertheless the legal title was vested in it for the benefit and security of the mortgage bondholders, and we perceive no reason why it is not entitled to sue at law and recover the value thereof, from one who has wrongfully dealt with and dissipated it, so that it cannot be restored to the proper custody. The authorities are quite numerous that a mortgagee may maintain what would at one time have been termed "an action on the case" for an injury wrongfully done to the mortgaged property, whether it be realty or personalty, whereby its value is impaired and the security of the mortgagee lessened, provided that, as a result of the wrongful act, the mortgagee sustains an actual loss. The recovery in such cases is commensurate with the loss.    Yates v. Joyce, 11 Johns. 136, 140; Van Pelt v. McGraw, 4 N. Y. 110; Edler v. Hasche, 67 Wis. 653, 31 N. W. 57; Sperry v. Ethridge, 70 Iowa, 27, 30 N. W. 4; Gooding v. Shea, 103 Mass. 360; Allison v. McCune, 15 Ohio, 729; Mitchell v. Mining Co. (Cal.) 17 Pac. 246–257; Heath v. Haile (S. C.) 24 S. E. 300. The special finding shows that the mortgaged property had been dissipated by the wrongful acts of the defendant, and that he refused to restore it, and could not in fact restore it in its entirety, when, upon the reversal of the order confirming the foreclosure sale, it became his duty to restore it to the Trust Company. Inasmuch as the mortgagor company seems to have been utterly insolvent at that time, the mortgagee's security became impaired to the full extent of the value of the mortgaged property when it was purchased by the defendant, and we know of no reason why the defendant may not be compelled to respond for its value in an action at law.

We are also of opinion that the second ground on which the judgment below is contested is equally untenable. If the case at bar were one in which the Trust Company was seeking to recover the mortgaged property or any specific part thereof, or to enforce a lien against the same, it may be conceded that the action could not be maintained because of the pendency of the foreclosure suit in the state court. By the commencement of that suit, the court in which the bill was filed acquired an exclusive jurisdiction over the mortgaged property, and any attempt to enforce a claim against the property itself, or any specific part thereof, must be made in the state court. Merritt v. Barge Co., 49 U. S. App. 85–93, 24 C. C. A. 530, and 79 Fed. 228; Gates v. Bucki, 12 U. S. App. 69, 4 C. C. A. 116, and 53 Fed. 961; Zimmerman v. Sorelle, 49 U. S. App.

387, 25 C. C. A. 518, and 80 Fed. 417. As has already appeared, however, the case at bar is not one in which the Trust Company sought to recover the property, but it is essentially an action at law to recover damages for its waste and destruction. It is a suit strictly in personam, which contemplates no interference with the mortgaged property, and requires no reference thereto, further than to ascertain its value at a certain date, and what has since been done with it. The bringing of this suit by the Trust Company upon the theory that the mortgaged property had been destroyed by the wrongful conduct of the defendant, and was no longer available as a security, was a practical abandonment by the mortgagees of all claim to the property, and an election on their part to take a money judgment for its value. It is probably true that the state court would have had adequate power, by orders made in the foreclosure suit at the instance of the Trust Company, to have compelled Hubinger to account for its value; but we think that it was under no obligation to seek for such relief in that suit, but was entitled, upon the facts found by the trial court, to sue at law for the damages which it had sustained. Buck v. Colbath, 3 Wall. 334; Stanton v. Embrey, 93 U. S. 548; Garabaldi v. Wright, 52 Ark. 416, 12 S. W. 875.

It was suggested on the oral argument, and some stress seems to be laid on the point in the brief, that the defendant below was not obliged to restore the property which he purchased at the foreclosure sale because of a provision found in the Iowa Code (McClain's Ann. Code, § 4429) to the effect that "property acquired by a purchaser in good faith, under a judgment subsequently reversed, shall not be affected by such reversal." It is obvious, however, that Hubinger is not within the protection of this provision of the Code, as the trial court very properly held (87 Fed. 3–8), because the judgment under which he purchased was not reversed, but remains undisturbed to this day. The only proceeding which was challenged by the appeal to the supreme court was the order confirming the sale, and the defendant below was a litigant before the supreme court, endeavoring to maintain that the order was not erroneous. We fully agree with the trial court that the defendant was not a purchaser under "a judgment subsequently reversed," and for that reason was not protected by the aforesaid provision of the Code, and that he was bound to restore the mortgaged property when the order approving the sale was reversed. Some other points are discussed in the brief of counsel for the plaintiff in error, but they are not of sufficient moment to deserve special notice. The judgment below was for the right party, and it is hereby affirmed.