SHARP et al. v. BONHAM et al.

(District Court, M. D. Tennessee, at Nashville. August 9, 1913.)

No. 3585.

1. COURTS (§ 317*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—REALIGNMENT OF PARTIES.

In a suit in a federal court of equity by members of one religious society, on behalf of themselves and all other members, against the representatives of another society, each society claiming the right to the possession and use of certain church property, to have the same decreed to be held in trust for the use and benefit of the society represented by complainants, to which suit the trustees who hold the legal title to the property are made parties defendant, the fact that such trustees, who are citizens of the same state as their codefendants, are in sympathy with complainants, does not require their realignment as complainants and defeat the jurisdiction of the court, nor does the further fact that they are active members of the society represented by complainants, since they are sued only in their capacity as trustees and title holders and are not required to personally take any part in the litigation.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 317.*]

2. RELIGIOUS SOCIETIES (§ 31*)—ACTIONS—INDISPENSABLE PARTIES—CLASS SUIT IN BEHALF OF MEMBERS.

In such suit, which is a class suit in behalf of all members of the society represented by complainants, it is not necessary that the elders or other persons who constitute its governing body should join as complainants.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 199–207; Dec. Dig. § 31.*]

3. COURTS (§ 493*)—JUDGMENT (§ 828*)—RES JUDICATA—SUITS IN FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

A class suit, brought in a federal court by representatives of one religious society against representatives of another, to determine as between the two societies the right to the possession and use of certain church property held by trustees, who are made defendants, is in the nature of a suit in rem, and the court retains jurisdiction to the end of the litigation, notwithstanding a decree of a state court rendered in a cross-suit between representatives of the same societies and involving the same issues, which was commenced pending an appeal in the federal suit, and wherein neither party apparently called the attention of the state courts to the pending suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. § 493;* Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

4. RELIGIOUS SOCIETIES (§ 34*)—UNION OF CHURCHES—VALIDITY.

The union effected in 1906 between the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church was valid, and vested the united church with all property rights at the time existing in either of the constituent churches.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 209–211; Dec. Dig. § 34.*]

In Equity. Suit by C. R. Sharp and others against E. W. Bonham and others. On final hearing. Decree for complainants.

This bill was brought in the United States Circuit Court for this district by members of a religious society in Nashville, Tennessee, known as Grace Church, citizens of States other than Tennessee, against the pastors and elders of another religious society calling itself Grace Cumberland Presbyterian

Church, and also against three individuals described as trustees, who held the legal title to certain land and a house of worship in the City of Nashville, all the defendants being citizens of Tennessee. The controversy grew out of the proceedings consolidating the Cumberland Presbyterian Church with the Presbyterian Church in the United States of America. It was alleged in the bill that the union had been legally effected; and the complainants sought a decree that the church property be declared to be held in trust for the congregation which adhered to the alleged united body. The defendants, other than the trustees, filed a plea in abatement to the jurisdiction, alleging, among other things, that the defendant trustees, who held the legal title to the property involved, were in substance parties complainant, and had been improperly joined as defendants for the purpose of creating a case cognizable in the Federal court. It was held by the court that, in the absence of any showing of antagonism between the trustees and the complainants, they should be re-aligned upon the same side of the controversy with the complainants, and the requisite diversity of citizenship being therefore destroyed, the plea to the jurisdiction was sustained. On appeal to the Supreme Court on the jurisdictional question involved, it was held that this court had erred in aligning the trustees with the complainants and in sustaining the defendants' plea to the jurisdiction. Sharpe v. Bonham, 224 U. S. 241, 32 Sup. Ct. 420, 56 L. Ed. 747. After the case had been remanded to this court the bill was amended, answers filed by the defendants and proof taken.

John M. Gaut, of Nashville, Tenn., for plaintiffs.

W. C. Caldwell, of Trenton, Tenn., W. B. Lamb, of Fayetteville, Tenn., and Frank Slemmons and J. H. Zarecor, both of Nashville, Tenn., for defendants.

SANFORD, District Judge. This case was heard upon the pleadings, stipulations and depositions before the new equity rules went into effect.

After careful consideration I have reached the following conclusions:

[1] The bill should not be dismissed for want of requisite diversity of citizenship on which to found the jurisdiction of the court. I held originally that as the essential object of this suit was to obtain a decree that the defendants Rhea, Gaut and Hardison, trustees of the Grace Church property, held title in trust for the exclusive use and benefit of the congregation of that Church, of which the complainants are members, in the absence of any showing of antagonism between them and the complainants they should be aligned upon the same side of the controversy with the complainants, and that as such re-alignment placed them, being citizens of Tennessee, upon the same side of the controversy with their co-defendants, also citizens of Tennessee, and the requisite diversity of citizenship was therefore destroyed, the plea in abatement to the jurisdiction of the court must be held good. On appeal to the Supreme Court, however, this was held to be erroneous, the Supreme Court saying that as the controversy in this case is with respect to the control of the church property which the three trustees held in trust, "as mere title holders, they were properly made parties defendant." Sharpe v. Bonham, 224 U. S. 241, 243, 32 Sup. Ct. 420, 56 L. Ed. 747.

After the suit had been remanded to this court for further proceedings the other defendants filed an answer in which they alleged that their two co-defendants Gaut and Hardison were at the time this bill

was filed active members and elders of the Grace Church and as such elders in the possession and control of the church property, and claimants of the property as against their co-defendants, the members of the Grace Cumberland Presbyterian Church, and that being on the same side of the controversy with the complainants they should be aligned accordingly; and the proof in the case, taken in connection with the averments of the complainants' bill substantially establishes these facts, which are not, as I understand, disputed. On this state of facts the complainants now insist that as this is, in effect, a class suit for the benefit of the congregation of Grace Church, of which these two trustees are members and elders, and as their interest as members in said church is identical with that of the complainants, they must now, upon the facts developed subsequently to the decision by the Supreme Court, be re-aligned as parties complainant and the bill dismissed for want of jurisdiction. And in this connection they rely upon the general rule in reference to the duty of the court as to the re-alignment of the parties as stated in my opinion in Stephens v. Smartt (C. C. E. D. Tenn.) 172 Fed. 466, 471, and the cases therein cited. In view of the fact that these two defendants as members of the Grace Church are, in a sense, as it now appears, at least inchoate parties plaintiff with the complainants as members of the class for whose benefit the suit is brought (30 Cyc. 138), there is strong ground for the contention that as their interests as such inchoate parties plaintiff and beneficiaries appears to be identical with that of the complainants, they should be re-aligned upon the same side of the controversy with them. However, no direct authority has been cited by either side upon this precise question, and after careful consideration I am constrained to hold that as the Supreme Court has held that, as mere title holders, the trustees were properly made defendants, the fact that they are now shown to have an inchoate interest with the complainants, as belonging to the class of beneficiaries for whom the complainants have brought this suit, does not so affect their status as parties, as trustees and title holders, in which capacity alone they have, in effect, been brought before the court, as to require a re-alignment of their position in the litigation, especially as they have filed an answer in which they disclaim any personal interest in the litigation and are as trustees taking no part in the contest between the complainants and their co-defendants. I therefore conclude that the bill should not be dismissed for want of Federal jurisdiction.

[2] For reasons analogous to those stated in my opinion, in the companion case of Helm v. Zarecor, 213 Fed. 648, I am of opinion that J. T. Harris and his associates, elders of the Grace Church, are not necessary parties to this suit in determining the essential controversy therein presented, as the bill has been construed by the Supreme Court, that is, the controversy "with respect to the control of the church property which the three trustees hold in trust."

[3] The next defense relied on is that of res judicata. The bill, as originally filed, was, in effect, a class suit brought by the complainants for the benefit of themselves and all other members of the Grace Church, against the trustees and all members of the Grace Cumberland

Presbyterian Church, its essential object being to obtain a decree that the trustees held the Grace Church property in trust for the exclusive use and benefit of the congregation of Grace Church, with injunctive relief incident thereto. By an amendment allowed after the case had been remanded to this court the bill was amended so as to show that the complainants sued in behalf of all the members of the Presbyterian Church in the United States of America as well as in their own behalf, but this amendment did not allege that the members of said Church in general had any substantial property interest in this particular church property, nor does the proof disclose such interest; and in so far as any material property rights are involved they are limited, in so far as disclosed by the proof, to the rights in the property claimed by and in behalf of the members of the Grace Church and the Grace Cumberland Presbyterian Church, respectively.

The essential facts alleged and proven in reference to the defense of res judicata are these:

The original bill in this case contained no prayer for the appointment of a receiver of the church property and no application for the appointment of a receiver was made at any time.

On April 14, 1910, the complainants' motion for a temporary restraining order was denied.

On March 26, 1910, my memorandum opinion was sent to the clerk holding that the plea in abatement to the jurisdiction should be allowed, and the preliminary injunction therefore denied, and directing that an order be entered accordingly. This opinion was filed on March 28, 1910. On the same day, March 28, 1910, the defendants Bonham and others, exclusive of the three trustees, and other members of the Grace Cumberland Presbyterian Church, filed a bill in the Chancery Court of Davidson County, Tennessee, entitled E. W. Bonham et al. v. J. T. Harris et al., in behalf of themselves and all other members of said church, against the elders of the Grace Church, including the defendants Gaut and Hardison, who were then in possession of the church property, and who were sued in their own right and as representatives of the membership of the Grace Church, seeking a decree that the church property belonged to the Grace Cumberland Presbyterian Church and not to Grace Church, that Bonham and his associates had the right to its possession and control, and that the union between the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, upon which the complainants in the present suit rely, was invalid. In other words, this was a class suit filed by representatives of the Grace Cumberland Presbyterian Church against representatives of the Grace Church, involving exactly the same fundamental question that is presented in the present case as to whether the church property was held in trust for the benefit of the members of the Grace Cumberland Presbyterian Church or for the members of the Grace Church, and necessarily involving, as in the present case, a determination of the question as to whether the union between the Cumberland Presbyterian Church and the Presbyterian Church of the United States of America was valid or invalid. It does not appear on what date subpoena to answer was served on the defendants in this suit in the Chancery Court.

On April 13, 1910, the complainants in the present suit having declined to plead over in this court, the present bill was dismissed for want of jurisdiction, and on April 14th the complainants in the present suit prayed and were granted an appeal to the Supreme Court of the United States.

The defendants in the Chancery Court at a subsequent date, not precisely shown, answered the bill in the Chancery Court. Their answer referred in a general way to the pendency of a bill in this cause, wherein, it was alleged,, certain non-resident members of Grace Presbyterian Church prayed that the complainants in said cause be enjoined from attempting to interfere or molest the defendants or their trustees constituting Grace Presbyterian Church in the use, enjoyment and possession of the property described in the bill in this cause; and, after setting forth the pendency of the appeal to the Supreme Court of the United States, they further answering said: "Defendants are advised that according to well-known rules of comity between the State and Federal courts this court will not take jurisdiction of this cause during the pendency of said former suit, and they therefore deny the right of complainants to institute or prosecute this suit at the present time."

It will be noticed from this answer that no formal plea to the jurisdiction of the Chancery Court appears to have been made, but a mere denial is made of the right to proceed, based on the rule of comity. And no motion to stay the proceedings in said chancery suit pending the determination of this present suit appears to have been made. And it is to be noted that the answer does not even set out the parties to the suit in this court or show that it was a class suit or even show that the trustees who hold title to the property were before the court in the present suit; and, in short, it does not in substance set forth a state of facts which would show that the suit was anything more than a mere suit in personam against certain defendants for the purpose of obtaining certain injunctive relief. It was further stated in this answer that the defendants would introduce a certified copy of the record in this cause as an exhibit to their answer, but whether this was done does not appear. Neither does it appear that this defense was ever actively brought to the attention of the Chancery Court, and no ruling appears to have been ever invoked or made by the Chancery Court in reference thereto, but the Chancery Court appears to have proceeded to a hearing of the cause on its merits, and to have decreed, without reference to any question of prior jurisdiction in this court, that the congregation of the Grace Cumberland Presbyterian Church was entitled to the possession, ownership, use and control of the church property. The defendants appealed from this decree to the Supreme Court of Tennessee, and at a later date that court affirmed the decree of the Chancery Court and adjudged that the complainants and other members constituting the congregation of Grace Cumberland Church were entitled to the ownership, use and possession of the Church property, and awarded the complainants a writ of possession therefor. Bonham v. Harris, 125 Tenn. 452, 145 S. W. 169. However, so far as appears from the published opinion of the Su-

preme Court of Tennessee, the question of the prior jurisdiction of this court was not presented to that court; and this question was neither considered in its opinion nor referred to in the decree of the court.

Subsequently the prior decree of this court, dismissing the bill for want of jurisdiction, was reversed by the Supreme Court of the United States and the cause remanded to this court for further proceedings. After this cause had been so remanded the defendants herein, other than the trustees, filed an answer in this cause in which they set up and relied upon the aforesaid proceedings and decrees in Bonham v. Harris in the State courts as res judicata of the questions involved in this suit.

It is clear to my mind, in the first place, that as Bonham v. Harris was a class suit by proper representatives of the Cumberland Presbyterian Church against proper representatives of the Grace Church, involving the same questions as to the validity or invalidity of the church union and the trust upon which the church property was held as are involved in the present suit, the decree of the State courts in favor of the representatives of the Grace Cumberland Presbyterian Church is conclusive of the issues involved in the present case as res judicata, provided the State courts had, under all the circumstances, jurisdiction to determine those questions; and this depends upon the question whether or not the proceedings earlier commenced in this court were such as to vest in this court exclusive jurisdiction of the subject matter of the controversy so as to deprive the State courts, under the circumstances, of any jurisdiction in reference thereto.

I furthermore think it clear, in view of the subsequent decree of the Supreme Court of the United States reversing the decree of this court, dismissing the bill and remanding the cause to this court for further proceedings, that the suit in this court must be deemed to have been continuously in this court for all jurisdictional purposes from the time the suit was instituted, especially as the proceedings in the State court were commenced while the suit was still pending in this court and before the entry of the decree of dismissal in this court, and it does not appear that process was issued or the defendants served with process in the State court in the interval between the dismissal of the suit in this court and the allowance of the appeal; although I do not think that if exclusive jurisdiction had been originally vested in this court it would be lost during the interval pending between the decree of dismissal and the allowance of the appeal to the Supreme Court.

Under these circumstances the controlling question presented is whether or not the proceedings in this court prior to the institution of the suit in the Chancery Court were such as to vest in this court exclusive jurisdiction of the subject matter of the litigation so as to deprive the State courts of any jurisdiction in regard thereto, pending the final termination of the suit in this court.

It is clear, on the one hand, as a rule of substantive law, applicable as between the Federal and State courts, that the court which first acquires jurisdiction over property in controversy or the res which constitutes the subject matter of the suit, is entitled to retain that

jurisdiction to the end of the litigation without interference from any other court whatever. 3 Street, Fed. Eq. Pract. § 2529, p. 1466, and cases cited in note 41. And this is more than a mere rule of comity as between the State and Federal courts; it is a "principle of right and law" which so operates that when one court takes a specific thing into its jurisdiction that res is as much withdrawn from the judicial power of any other court as if it had been carried physically into a different territorial sovereignty. Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 28 L. Ed. 390.

It is equally clear, on the other hand, that the mere fact of the pendency of two suits in personam between the same parties, upon the same identical cause of action, in courts of different jurisdictions, does not make a case in which the jurisdiction of one court is impeded or interfered with by the action of the other. Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983; Gordon v. Gilfoil, 99 U. S. 168, 178, 25 L. Ed. 383; Hubinger v. Trust Co. (8th Cir.) 94 Fed. 788, 36 C. C. A. 494; Powers v. Building & Loan Assoc. (C. C.) 86 Fed. 705, 708; 1 Fost. Fed. Pract. (4th Ed.) 506. In such case the pendency of the former suit in personam is not a matter going to the jurisdiction or ground for the abatement of the second suit, although as a rule of comity between the courts the second court will ordinarily upon proper motion stay its proceedings until the termination of the litigation in the former court. Simk. Fed. Suit Eq. [2d Ed.] 410. But in such case if such stay is not had and if final judgment be rendered first in the court in which the proceedings were later instituted, such judgment will thereafter be binding as res judicata between the parties in the court in which the proceedings were first instituted. Merritt v. Steel-Barge Co. (8th Cir.) 79 Fed. 228, 24 C. C. A. 530. And see Gates v. Bucki (8th Cir.) 53 Fed. 961, 965, 4 C. C. A. 116.

The precise question for determination in the present case then is whether this suit, which was brought to declare and enforce a trust upon which the church property was held, and in which the trustees holding title to the property were made party defendants and brought before the court, is to be deemed as falling within the rule applicable to suits where the res is in the actual possession of the court, on the one side, in which case its jurisdiction remained exclusive until the determination of the litigation, or whether, on the other hand, it is to be deemed analogous to a mere suit in personam, in which this court had not exclusive jurisdiction and in which the prior judgment in the State courts should be held conclusive as to the rights of the present litigants through their proper class representation in the other suit.

After careful consideration of the authorities I am of opinion that the nature of this suit is such that this court must be held to have had exclusive jurisdiction of the subject matter of the controversy even although the property involved had not been taken into its actual custody. In Powers v. Building & Loan Assoc. (C. C.) supra, Judge Lurton (now Mr. Justice Lurton) said (86 Fed. at page 707):

"The principle that, where property is in the actual possession of one court of competent jurisdiction, such possession cannot be interfered with by process out of another court, is well settled. Buck v. Colbath, 3 Wall. 334

[18 L. Ed. 257]; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27 [28 L. Ed. 145]; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906 [37 L. Ed. 867]; Compton v. Railroad Co., 31 U. S. App. 486, 523, 530, 15 C. C. A. 397, 68 Fed. 263. There are two classes of cases in which the court first obtaining jurisdiction should be suffered to proceed without any interference by process from another of concurrent jurisdiction. The first class consists of those cases in which the exercise of jurisdiction by one court will interfere with the prior possession of the res by another court of competent and concurrent jurisdiction. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27 [28 L. Ed. 145]; Heidritter v. Oil-Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135 [28 L. Ed. 729]; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906 [37 L. Ed. 867]. The second class is where there are two suits pending in different courts of concurrent jurisdiction, in which the parties are the same, and which involve and affect the same subject-matter, and where the jurisdiction of neither is complete nor effectual unless it may, if necessary or proper, exercise exclusive dominion over the res in litigation. The cases relied upon by counsel for defendants of Gates v. Bucki, 12 U. S. App. 69, 4 C. C. A. 116, 53 Fed. 961; Merritt v. Barge Co., 24 C. C. A. 530, 79 Fed. 228; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417; and Sharon v. Terry (C. C.) 36 Fed. 337—are cases belonging to the latter class. The conflict exists in such instances because the suits are in the nature of suits in rem."

In Illinois Steel Co. v. Putnam (5th Cir.) 68 Fed. 515, 517, 15 C. C. A. 556, 558, the court said in language which is cited with approval in 3 Street, Fed. Eq. Pract. § 2534, p. 1470:

"Where a bill in equity brings under the direct control of the court all the property and estate of the defendants, or of certain named defendants, or certain designated property of all or of either of the defendants, to be administered for the benefit of all entitled to share in the fruits of the litigation, and the possession and control of the property are necessary to the exercise of the jurisdiction of the court, the filing of the bill and service of process is an equitable levy on the property, and pending the proceedings such property may properly be held to be in gremio legis. The actual seizure of the property is not necessary to produce this effect, where the possession of the property is necessary to the granting of the relief sought. In such cases the commencement of the suit is sufficient to give the court whose jurisdiction is invoked the exclusive right to control the property. Adams v. Trust Co., 66 Fed. 617 [15 C. C. A. 1]."

In Merritt v. Steel-Barge Co. (8th Cir.) 79 Fed. 228, 231, 24 C. C. A. 530, 533, the court said:

"The doctrine is well settled that when a court, in the progress of a suit properly pending before it, takes possession of property, either under a writ of replevin or attachment, or by other mesne or final process, or by the appointment of a receiver or assignee, its jurisdiction over the property for the time being becomes exclusive, and no other court can lawfully interfere with the possession so acquired. While property is so held it cannot be sold under the judgment, sentence, or decree of any other tribunal. Moreover, so long as the property remains in custodia legis, no other court, unless by special leave of the court which first acquired jurisdiction, can lawfully proceed with the trial and determination of a suit the object of which is to establish a lien against the property, or to subject the specific property to the payment of debts, or which may result in creating conflicting rights or titles thereto. The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Peck v. Jenness, 7 How. 612, 624, 625 [12 L. Ed. 841]; Taylor v. Carryl, 20 How. 583, 597 [15 L. Ed. 1028]; Wiswall v. Sampson, 14 How. 52

[14 L. Ed. 322]; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355 [28 L. Ed. 390]; Heidritter v. Oil-Cloth Co., 112 U. S. 294, 302, 5 Sup. Ct. 135 [28 L. Ed. 729]; Riggs v. Johnson Co., 6 Wall. 166, 196 [18 L. Ed. 768]; Central Trust Co. of New York v. South Atlantic & O. R. Co. (C. C.) 57 Fed. 3. The doctrine in question is not limited in its application to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, *administer trusts*, or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property. In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court. And this rule, in its application to federal and state courts, being the outgrowth of necessity, is 'a principle of right and of law,' which leaves nothing to the discretion of a court, and may not be varied to suit the convenience of litigants. Gates v. Bucki, 12 U. S. App. 69, 4 C. C. A. 116, 53 Fed. 961; Chittenden v. Brewster, 2 Wall. 191 [17 L. Ed. 839]; Orton v. Smith, 18 How. 263, 265 [15 L. Ed. 393]; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, 24 Fed. Cas. 704; Owens v. Railroad Co. (C. C.) 20 Fed. 10; Union Mut. Life Ins. Co. v. University of Chicago (C. C.) 6 Fed. 443."

And see Adams v. Mercantile Trust Co. (5th Cir.) 66 Fed. 617, 620, 15 C. C. A. 1.

And in Farmers' Loan Co. v. Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 568 (44 L. Ed. 667) in which it was held that as between the same parties in a proceeding in rem, exclusive jurisdiction must be regarded as attaching when the bill was filed and process had been issued, the court said:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, *administer trusts* or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of special importance in its application to Federal and State courts. Peck v. Jenness, 7 How. 612 [12 L. Ed. 841]; Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Moran v. Sturges, 154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981]; Central Bank v. Stevens, 169 U. S. 432 [18 Sup. Ct. 403, 42 L. Ed. 807]; Harkrader v. Wadley, 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399]."

Applying the rule laid down in the foregoing authorities, I am of opinion that this suit, being brought to declare and enforce a trust in real property and being one in which the trustees holding title to the property were brought before the court by service of process, and in which in the progress of the litigation the court might be compelled to assume possession and control of the property to be affected, must be deemed a suit in the nature of a suit in rem in such sense that upon the filing of the bill and the issuance and service of the process the exclusive jurisdiction of this court attached, and that it must be held to have retained such exclusive jurisdiction to determine the subject mat-

ter of the controversy until the termination of this litigation. I am therefore constrained to hold that as the exclusive jurisdiction of the subject matter of this controversy was vested in this court there was no jurisdiction in the State courts over the same, and that the decrees entered in the State court in the subsequent suit of Bonham v. Harris must hence be held to be ineffective and unavailing as res judicata as against the right and duty of this court to now pass upon the merits of the controversy. I may add that I reach this conclusion with less reluctance, as I am constrained to conclude upon examining the record in Bonham v. Harris that this question was never directly presented to either the Chancery Court or the Supreme Court of Tennessee, and that the decrees in the said two courts were apparently rendered without having had this matter brought to the attention of either court.

In this connection I have had some slight question in my mind as to whether the failure of the defendants in Bonham v. Harris to properly plead the facts showing the prior jurisdiction of this court and to bring the matter specifically to the attention of the State courts could operate to make the decrees in said cause binding against them, or those whom they represent; but after careful consideration I am constrained to conclude that this question goes deeper than the mere conduct or laches of the parties themselves or those by whom they were represented in the former litigation, and that as the exclusive jurisdiction of this controversy was in this court it cannot be held to have been taken away so as to give another court jurisdiction of a matter in fact withdrawn from its authority, merely because the litigants failed to properly bring the facts to the attention of the State courts, especially as the complainants in the Chancery Court, in invoking the jurisdiction of that court, failed to advise that court of the pendency and character of the prior proceedings in this court.

[4] Upon the merits of the controversy I am of opinion, for the reasons fully stated in the above mentioned opinion in Helm v. Zarecor, that the union between the Cumberland Presbyterian Church and the Presbyterian Church of the United States of America, as effected in 1906, whether termed a union, re-union, merger or absorption, was a valid union, not in conflict with the constitution of the Cumberland Presbyterian Church, rightfully entered into by its General Assembly in the exercise of its implied authority, and not involving any such difference in the doctrine and polity of the two churches as to constitute an inseparable legal barrier to the union, as conclusively determined by its general assembly, its highest legislative and judicial tribunal; and am further of opinion that in consequence of such valid union the complainants, as representatives of the members of Grace Church, recognizing the validity of the union, are entitled to a decree as such representatives adjudging that the church property is to be held for the exclusive use and benefit of its congregation, and to an injunction against interference therewith by the defendants representing the members of the Grace Cumberland Presbyterian Church, who deny the validity of such union.

A decree will accordingly be entered adjudging that the defendants Rhea, Gaut and Hardison as trustees of Grace Church, and their suc-

cessors and associates in office, hold title to the Grace Church property in trust for the exclusive use and benefit of the complainants and other members of the congregation of Grace Church, which adheres to the united church, and that the session of said church has exclusive right to the control, possession and use of the property, and the pastor employed by it, the sole right to occupy its pulpit and conduct its services; and enjoining all the defendants, except the said Rhea, Gaut and Hardison, and all other members of the Grace Cumberland Presbyterian Church, from taking or attempting to take possession of the said house of worship, or other property contained therein or pertaining thereto, and from interfering with the pastor of said Grace Church, or his successor or successors, in the conduct of religious exercises, or other functions as pastor, or from in any manner disturbing or interfering with the complainants and other members of the congregation of Grace Church, its pastors, officers or members, in the possession, use or enjoyment of such property; and adjudging all the costs of the cause against the defendants, except the defendants Rhea, Gaut and Hardison.